Donelle KEATON, Plaintiff,

v.

COBB COUNTY, Georgia, et al., Defendants.

Civil Action File No. 1:06–CV–1438–RWS–AJB.

United States District Court, N.D. Georgia, Atlanta Division.

Feb. 19, 2008.

 

 

 
 
 
 
 
 
 
 
 
 
 

 
 
 
 
 

 
 
 
 

 
 
 

 
 
 
 

 
 

Kattegummula Prabhaker Reddy, The Reddy Law Firm, Atlanta, GA, for Plaintiff.

Deborah L. Dance, Mark Alan Adelman, Law Department, Marietta, GA, for Defendants.

## ORDER

RICHARD W. STORY, District Judge.

This case is before the Court for consideration of the Report and Recommenda-

tion [42] of Magistrate Judge Alan J. Baverman and Defendants' Motion for Leave to File Excess Pages [45]. As an initial matter, Defendants' Motion for Leave to File Excess Pages [45] is **GRANTED.** After considering the Report and Recommendation ("R & R") and the Objections thereto, the Court enters the following Order.

Plaintiff, an African–American female filed a civil action against Cobb County, Georgia ("Cobb County"), and Shonell Sfreddo and Michele Marchant–Wellmon (the "individual Defendants") in their individual and official capacities (collectively "Defendants"). Plaintiff alleged that Cobb County engaged in race discrimination in violation of the Equal Protection clause of the Fourteenth Amendment and Title VII of the Civil Rights Act of 1964. She also alleged that Sfreddo and Marchant–Wellmon engaged in race discrimination under color of state law, in violation of the Equal Protection clause of the Fourteenth Amendment. These claims arise from the Defendants' failure to select Plaintiff for two positions in the Cobb County Juvenile Court: the Clerk of Court position in April 2005 and the Judicial Administrative Supervisor ("JAS") position also in April 2005.

Defendants filed a Motion for Summary Judgment on all of Plaintiff's claims. Judge Baverman entered an R & R recommending that Defendants' Motion for Summary Judgment be granted as to all of Plaintiff's claims except Plaintiff's Title VII claim against Cobb County concerning the JAS position and Plaintiff's § 1983 claims against Sfreddo and Marchant–Wellmon concerning the failure to promote Plaintiff to the JAS position. Judge Baverman also found that the individual Defendants were not entitled to qualified immunity.

■ This Court agrees with the conclusions recommending the granting of summary judgment and adopts the findings of fact and conclusions of law of the R & R as to all of those claims. The Court also adopts the findings of fact as to the claims for which denial of summary judgment is recommended. However, the Court sustains Defendants' objection to the conclusion of law that the facts of the present case warrant an exception to the Eleventh Circuit requirement that a plaintiff must establish pretext for all legitimate, nondiscriminatory reasons for an employment action proffered by a defendant. (R & R at 1312–13).

"Defendant has raised three legitimate, nondiscriminatory reasons for not promoting Plaintiff [to the JAS position]: her interview responses, Walker's superior supervisory experience, and Walker's greater experience." (R & R at 1313.) Although Judge Baverman found that "Plaintiff has not offered any evidence to undermine the veracity of Defendant's reason that Walker had better experience," he found this case to be an exception to the "rule that a plaintiff must establish pretext as to each proffered reason." (R & R at 1313.) He relies upon a footnote in *Chapman v. AI Transp.*, 229 F.3d 1012, 1037 n. 30 (11th Cir.2000)(en banc) to support this exception. (*See* R & R at 1313.) But, the footnote on which he relies—rather than indicating that such an exception might exist—(1) rejected the dissent's application of such an exception and (2) expressed no view on its availability in other cases:

> The dissenting opinion would carve out a number of exceptions to the well-established rule that a plaintiff must show pretext as to each proffered reason. To the extent this case presents a factual basis for any such exception, we reject that exception. To the extent this case does not present a factual basis for such an exception, *we express no view* on

whether that exception might exist in some case with different facts.

*Id.* (emphasis added).

■ Furthermore, seven years after *Chapman,* a unanimous panel of the Eleventh Circuit appeared to have rejected the notion that the dissent in *Chapman* advances and the notion on which Judge Baverman relies—namely, that indirect rebuttal evidence may suffice to show discrimination, despite the defendant's proffer of a legitimate, and unrebutted, nondiscriminatory reason. *See Crawford v. City of Fairburn,* 482 F.3d 1305, 1308 (11th Cir.2007). ("If the employer proffers more than one legitimate, nondiscriminatory reason, the plaintiff must rebut each of the reasons to survive a motion for summary judgment."). Noting that a plaintiff must meet each reason proffered "head on" and rebut it, the Court rejected the plaintiff's argument that evidence of discriminatory animus could establish pretext:

> Crawford erroneously argues that evidence of a discriminatory animus allows a plaintiff to establish pretext without rebutting each of the proffered reasons of the employer. The cases he cites for this proposition are inapposite, because in each case the plaintiff presented evidence that directly rebutted the proffered reasons of the employer.... By failing to rebut *each* of the legitimate, nondiscriminatory reasons of the City, Crawford has failed to raise a genuine issue of material fact about whether those reasons were pretext for discrimination.

*Id.* at 1309 (emphasis in original).

Following the decision in *Crawford,* several district courts within this circuit appear to have rejected the exception proposed by the *Chapman* dissent. *See, e.g., Sabatier v. Suntrust Bank,* No. 06–20418–CIV, 2008 WL 108796, at * 15 (S.D.Fla.

Jan.4, 2008) ("The Court notes that the governing standard in this Circuit is set forth in *Crawford v. City of Fairburn,* where the Eleventh Circuit held that '[i]f the employer proffers more than one legitimate, nondiscriminatory reason, the plaintiff must rebut each of the reasons to survive a motion for summary judgment.' "); *Cone v. Health Management Associates, Inc.,* No. 606CV081, 2007 WL 1702867, at *3 (S.D.Ga. June 11, 2007) ("[A] recent Eleventh Circuit case has altered the analytical framework. Now, when a plaintiff brings only a prima facie case and 'discriminatory-motivation' evidence, the defendant is entitled to summary judgment. In other words, 'unworthy-of-credence' evidence is required for every articulated legitimate, non-discriminatory reason." (citing *Crawford,* 482 F.3d at 1309)).

The Court concludes that Plaintiff is required to rebut each of the legitimate, nondiscriminatory reasons proffered by Defendants to survive summary judgment. "Plaintiff has not offered any evidence to undermine the veracity of Defendants' reason that Walker had better experience." (R & R at 1313.) Therefore, Defendants are entitled to summary judgment on Plaintiff's claims relating to the failure to promote Plaintiff to the JAS position.

Based on the foregoing, Defendants' Motion for Leave to File Excess Pages [45] is **GRANTED,** and Defendants' Motion for Summary Judgment [25] is **GRANTED** as to all claims. Judgment shall be entered in favor of Defendants.

### *UNITED STATES MAGISTRATE JUDGE'S ORDER AND NON–FINAL REPORT AND RECOMMENDATION*

ALAN J. BAVERMAN, United States Magistrate Judge.

Currently before the Court are Defendants' Motion for Summary Judgment and

Motion to Exceed the Page Limit, [Doc. 25], and Plaintiff's Motion for Leave to File Excess Pages. [Doc. 30]. For the reasons set forth herein, the Court **RECOMMENDS** that Defendants' motion for summary judgment, [Doc. 25], be **GRANTED IN PART AND DENIED IN PART.** The Court also **GRANTS AS UNOPPOSED** the parties' motions to exceed the page limit, [Docs. 25, 30].[1]

## I. INTRODUCTION

On June 15, 2006, Donelle Keaton ("Plaintiff" or "Keaton"), an African-American female, filed a civil action against Cobb County, Georgia ("Cobb County"), and Shonell Sfreddo and Michelle Marchant–Wellmon (the "individual Defendants") in their individual and official capacities (collectively "Defendants"). Plaintiff alleged that Cobb County engaged in race discrimination in violation of the equal protection clause of the Fourteenth Amendment (enforced through 42 U.S.C. § 1983) and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, ("Title VII"). She also alleged that Sfreddo and Marchant–Wellmon engaged in race discrimination under color of state law, in violation of the equal protection clause of the Fourteenth Amendment (enforced through 42 U.S.C. § 1983). [Doc. 1]. Defendants filed an answer on July 5, 2006. [Doc. 2].

On April 25, 2007, Defendants filed a motion for summary judgment on all of Plaintiff's claims. [Doc. 25]. Plaintiff then filed a response brief, [Doc. 33], and Defendants filed a reply brief, [Doc. 41].

With briefing completed, the Court turns to the merits of Defendants' motion for summary judgment.

## II. STATEMENT OF FACTS

The Court construes the pertinent facts of this case at the summary judgment stage in the light most favorable to Plaintiff as the non-moving party.[2]

### A. Plaintiff's Background

Plaintiff graduated from high school in May 1985. (Keaton Dep. at 8). Plaintiff later obtained her associates degree in arts in 1995 or 1996. (*Id.* at 9–10). She then received a bachelors degree from Morris College in Sumter, S.C., in May 2000 with a major in organizational management, which involves management training within different organizations. (*Id.* at 16–17).

After graduating from high school, Plaintiff worked at a mall store, Athletic Warehouse, for three years. (Keaton Dep. at 11). She then became a customer service representative with Provident Finance where she worked for five years. Provident Finance changed names to American General Finance, and Plaintiff worked for American General for approximately three years as a senior customer service representative. (*Id.* at 11–13). These customer service representative jobs involved processing loan applications, receiving payments on loans, drawing up loan contracts, closing loans, and drawing up contracts for financing cars. (*Id.* at 13–14). The senior service representative also monitored the customer service representative by review-

---

**1.** Neither party opposes the other party's motion for leave to file excess pages. As a result, the Court treats the motions for leave to file excess pages as unopposed. *See* N.D. Ga. R. 7.1B ("Failure to file a response shall indicate that there is no opposition to the motion."). Accordingly, the motions, [Docs. 25, 30] are **GRANTED.**

**2.** In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, Plaintiff in the instant case. *Wilson v. B/E Aerospace, Inc.,* 376 F.3d 1079, 1085 (11th Cir.2004) (citing *Damon v. Fleming Supermarkets of Fla., Inc.,* 196 F.3d 1354, 1358 (11th Cir.1999)).

ing the customer service representative deposits and ensuring that the customer service representative's drawer balanced at the end of the day. (*Id.* at 14). Plaintiff was not officially a supervisor in the senior customer service position, and she did not give performance evaluations or issue discipline. (*Id.*).

Plaintiff left American General in 1997 because she was offered a job at the Sumter County Magistrate Court. (Keaton Dep. at 18). Plaintiff worked for three years as a Civil Clerk of Court in the Magistrate Court in Sumter County, S.C. (P ¶ 46; Keaton Dep. at 19–20).[3] As a civil clerk for the magistrate court, Plaintiff assisted the three full-time magistrate judges in court, processed summonses and complaints, processed claim and delivery, and dealt with landlord-tenant evictions. (Keaton Dep. at 18–19).

Plaintiff left the civil clerk position to move to the Atlanta region where she found a job as a legal assistant with a law firm. (Keaton Dep. at 20–21). In this position, Plaintiff interviewed clients who were filing lawsuits and helped develop their cases. (*Id.* at 21–22). Plaintiff worked as a legal assistant for a little over one year. (*Id.* at 22).

In August 2001, Plaintiff left her legal assistant position to work for the Cobb County Juvenile Court as a Judicial Administrative Tech III ("JAT III" or "courtroom clerk"). (*Id.* at 27–29, 34; P ¶ 1). As a JAT III, Plaintiff assisted the judges in court, prepared files for court, provided judges with orders at the end of each case, and prepared packets for completed cases. (*Id.* at 35–36). While working for the Ju-

venile Court, Plaintiff received recognition as employee of the quarter. Plaintiff also handled the files, paperwork, and calendaring for Juvenile Drug Court, which was a separate duty from the JAT III position. (*Id.* at 48). Plaintiff further completed the Stepping Up to Supervisor Workshop. (*Id.* at 48).

### B. The Individual Defendants

Marchant–Wellmon is the Director for the Juvenile Court of Cobb County. (P ¶ 3). As the Director, Marchant–Wellmon is the primary manager of the Juvenile Court and possesses the ultimate hiring authority for all positions in the court except for judges and their staff. (Marchant–Wellmon Dep. at 14; P ¶ 16). She also evaluates employees, issues discipline and provides other supervisory instruction for Juvenile Court functions. (D ¶ 10).

Sfreddo has worked for the Juvenile Court for over 18 years. (D ¶ 15). Sfreddo currently serves as the Clerk of Court for the Juvenile Court of Cobb County ("Clerk"). (D ¶ 5). In this position, she supervises the operation of the Clerk's office with the help of two Judicial Administrative Supervisors. (P ¶ 21). As the Clerk, Sfreddo reports directly to Marchant–Wellmon. (P ¶ 20). Prior to becoming the Clerk, Sfreddo did not have supervisory experience, (Marchant–Wellmon Dep. at 32), but she completed the Stepping Up to Supervisor course, (D ¶ 16).

Sfreddo does not possess a four-year college degree, (P ¶ 36), but she does possess a high school diploma, (D ¶ 15).

---

**3.** Paragraph numbers preceded by "P" refer to "Plaintiff's Statement of Material Facts as to Which There Are Genuine Issues to Be Tried," [Doc. 34], while paragraph numbers preceded by "D" refer to paragraphs in Defendants' "Statement of Material Facts as to Which There Are No Genuine Issues to Be Tried." [Doc. 25–3]. Likewise, paragraph numbers preceded by "P Resp." refer to Plaintiff's Response to Defendants' Statement of Material Facts, [Doc. 32], while paragraph numbers preceded by "D Resp." refer to Defendants' Response to Plaintiff's Statement of Material Facts, [Doc. 40].

Sfreddo worked as a Clerk Typist II between 1987 and 1991 in the Juvenile Court. She then became a Judicial Administrative Tech II between 1991 and 1994. From 1995 to 2000, Sfreddo worked as a JAT III. (Sfreddo Dep. at 17–18). Thereafter, Sfreddo worked as a Judicial Administrative specialist immediately before becoming Clerk. In this position, she worked for two judges. (*Id.* at 45). Sfreddo was not assigned to the courtroom and primarily performed clerical duties for the judges such as copying, typing, faxing, scheduling, taking messages, answering phones, and serving as a liaison between the court and the public and attorneys. (P ¶¶ 43–44; Sfreddo Dep. at 14–17).

### C. Human Resources and Cobb County Policies

Anthony Hagler has served as the Director of Cobb County's Human Resources ("HR") Department since 1999. (D ¶ 3). The HR Department prepares and announces all vacant positions through written job announcements. (P ¶ 7). Cobb County provides supervisors with direction in interviewing and hiring employees on its website. (D ¶ 4). The Juvenile Court follows the HR Department's guidelines. (D ¶ 6).

When a job announcement states "Degree preferred," this means that a four-year degree is preferred, but does not require that an applicant have a degree. (D ¶ 7).[4] Cobb County hiring officials are expected to evaluate candidates based upon the preferred criteria in a job announcement. (P ¶ 9).

If a job candidate provides false information on an application, Cobb County policy requires that the candidate be disqualified. (P ¶ 13). Therefore, if a candidate indicated that she had a high school

degree, but only had a GED, this might constitute false statement. (Hagler Dep. at 52). However, it might not be false information because an applicant may get confused and think that her GED is the same as being a high school graduate. (*Id.* at 52–54). Also, if a candidate indicates that she has a degree, this means that she has received a diploma, not a certification. (*Id.* at 58–59).

It is also against county policy to acquire additional information to justify a hiring decision after the decision has been made, (P ¶ 103); however, a hiring official may seek additional information after selecting a candidate to verify job requirements like educational background, certifications, or other information that needed to be confirmed. (Hagler Dep. at 36).

### D. The Clerk of Courts Position

On March 21, 2005, the HR Department advertised for the position of Clerk of Court. (P ¶ 24). The Clerk was responsible for: (1) supervising employees; (2) maintaining the record keeping system; (3) developing and implementing accounting controls; (4) providing information, feedback, or assistance to others in the department; (5) monitoring and communicating policies, procedures, and standards for the department; and (6) planning, allocating, and monitoring time, people, equipment, and other resources to ensure efficient organization and completion of work. (P ¶ 26). The Clerk job announcement stated that a four-year college degree was a preferred criterion, (P ¶ 25), but it was not designated as a deciding factor for promotion, (D ¶ 20). Other considerations for the position were supervisory experience, work record, personnel record, other experience, personal recommendations,

---

4. Plaintiff did not respond to Defendants' statement of fact in paragraph 7, so the Court deems it to be admitted. *See* N.D. Ga. R. 56.1B(2)(a)(2).

and knowledge of the clerk's unit. (Marchant–Wellmon Dep. at 33, 62; P ¶ 34). Marchant–Wellmon was the hiring official for the Clerk position. (D ¶ 9).

There were six applicants for the Clerk position, (D ¶ 12), including: Plaintiff; Sfreddo, a white employee; and Janice Walker, a white employee, (P ¶¶ 28–29). During Plaintiff's interview, she provided Marchant–Wellmon with a portfolio containing, among other items, college degrees, reference letters, and the certificate for the Stepping Up to Supervisor course. (P ¶ 36). Marchant–Wellmon determined that Plaintiff and Sfreddo were the top two candidates for the Clerk position. (P ¶ 31). Walker was not one of the top three candidates for the Clerk position. (P ¶ 32).

Marchant–Wellmon believed that Plaintiff had the advantage over Sfreddo in terms of her education because of Plaintiff's four-year degree. (Marchant–Wellmon Dep. at 65–66). Sfreddo had the advantage regarding: (1) her experience in working in a court setting; (2) her knowledge of the clerk's unit since Sfreddo had been there for 14 years both on the courtroom side and the records side; and (3) her four-and-a-half years experience in the judicial unit. (*Id.* at 71–72). Plaintiff and Sfreddo were equal in terms of completing the Stepping Up to Supervisor program and their performance in the oral interviews. (*Id.* at 72–73). Marchant–Wellmon selected Sfreddo for the Clerk position on April 18, 2005, (D ¶ 14; P ¶ 33), because she had: (1) a high school degree; (2) completed the Stepping Up course; and (3) 18 years of experience in the Juvenile Court, (P ¶ 41).

### E. Judicial Administrative Supervisor Position

#### 1. JAS Job Functions

On March 21, 2005, the HR Department announced an opening for a Judicial Administrative Supervisor ("JAS") position. (P ¶ 47). The JAS reported to the Clerk and supervised the JAT II and JAT III employees. (P ¶¶ 22, 51). The essential functions of the JAS position included: (1) ensuring efficient operation of courtrooms and courtroom procedures; (2) carrying out supervisory responsibilities; (3) providing information, feedback, and assistance to others in the department; (4) maintaining updated reports and records; and (5) compiling and maintaining daily calendars for all court hearings. (P ¶ 49). A four-year college degree was a preferred criterion for the JAS position, (P ¶ 48), but the JAS position only required a high school diploma or GED and three years experience. (D ¶ 29). The duties of the JAS are a subunit of the Clerk and are less broad and less complex than the Clerk's duties. (P ¶¶ 23, 52).

#### 2. Janice Walker's Background

Plaintiff and Janice Walker, among others, applied for the JAS position in March 2005. (D ¶ 27; Walker Dep. at 7). In Walker's application, she indicated that she completed high school, and wrote paralegal in the space on the application that asked about the type of degree. (Walker Dep. at 23–25). Walker did not complete high school or have a paralegal degree, but she had paralegal certification. (*Id.* at 24–25). Walker stated that she failed to clarify that she did not have a paralegal degree because she did not know that a paralegal degree existed. (*Id.* at 65–66). Walker circled "yes" in indicating that she received a degree because she wanted to indicate that she received her certification and there was no other space to do so. (*Id.* at 66). Walker did not possess a four-year college degree. (P ¶ 61). Sfreddo knew that Walker had a GED and paralegal certificate at the time of Walker's interview. (D ¶ 42).

Walker's work history was as follows. Between 1990 and 1993, Walker worked for Cobb County Records Management in which she supervised inmates who helped transport county and court records between Cobb County departments. (Walker Dep. at 27–29). Walker ensured that the inmates picked up the right documents to transport. (*Id.* at 29). Walker then moved to the Probate Court from July 1993 to April 1998 where she worked briefly as a clerk and then as a deputy clerk for Judge Dodd. (*Id.* at 31–32). Walker supervised the deputy clerks in the Probate Court's training program. (*Id.* at 34). Walker did not supervise employees in the sense of assigning them day-to-day job duties, performing performance reviews, disciplining employees, and approving leave requests. (*Id.* at 35, 42). After leaving Probate Court, Walker took a year and a half break and then returned to the Tax Assessor's office in a clerical position. (*Id.* at 41–42). Walker then joined the Juvenile Court as a JAT III, the same position held by Plaintiff. (*Id.* at 42–43).

In Walker's prior employment, she never provided supervision in terms of discipline, assigning work, or providing performance reviews. (*Id.* at 43; P ¶ 90). Walker never took the Stepping Up To Supervisor course, (Walker Dep. at 46), but after being promoted, she completed supervisor training that was mandatory for all Cobb County supervisors, (*id.* at 45–46). Walker had one more year of experience than Plaintiff in the Juvenile Court. (P ¶ 99).

*3. The Decision Making Process for the JAS Position*

Marchant–Wellmon provided Sfreddo guidance in the promotional process for the JAS, (P ¶ 55), but Sfreddo was the hiring manager while Marchant–Wellmon served in an advisory capacity for the JAS position, (Marchant–Wellmon Dep. at 92–93). Marchant–Wellmon reviewed interview questions with Sfreddo. (D ¶ 34). Sfreddo interviewed five candidates for the JAS position, all of whom were white except Plaintiff. (D ¶¶ 38–39). Both Sfreddo and Marchant–Wellmon took notes during the interviews. (P ¶¶ 67, 69). Sfreddo with Marchant–Wellmon present interviewed Plaintiff for the JAS position on April 21, 2005. (Keaton Dep. at 69–70).

During Plaintiff's interview, Plaintiff was asked a series of questions about the clerk's office. (Keaton Dep. at 70). Plaintiff indicated that she wanted more training on courtroom procedures for the clerks. (*Id.* at 71). Plaintiff stated that it would be okay for a clerk to work from 7:00 am to 4:00 pm if the clerk could complete the work. (*Id.* at 71–72). Plaintiff suggested that she would not want to bother the Clerk too much because the Clerk had more responsibilities. (*Id.* at 72–73).

Sfreddo evaluated the candidates along the following criteria: education; work experience; court experience; and supervisory experience. (Sfreddo Dep. at 34–35). Sfreddo chose Plaintiff and Walker as the final two candidates. (P ¶ 57).[5] When Sfreddo informed Marchant–Wellmon of this information, Marchant–Wellmon indicated that Plaintiff had been very high on the list for the Clerk position, but Marchant–Wellmon did not mention Walker. (Sfreddo Dep. at 28–29). Sfreddo created a written comparative list of Plaintiff and Walker to determine whom to hire. (*Id.* at

---

**5.** Sfreddo was aware that Marchant–Wellmon rated Plaintiff as one of the top two candidates for the Clerk position and rated Walker outside of the top three candidates for the Clerk position. (P ¶ 54).

47). She threw this list away once she made her decision. (*Id.*).[6] Within two hours of Plaintiff's interview, Sfreddo informed Plaintiff that she would not be selected for the JAS position because she was not going in the direction that Sfreddo wanted to go. (P ¶ 106).

Sfreddo chose Walker for the JAS position based on the applications, the interviews, Keaton's portfolio, and the personnel files, (P ¶ 58). Sfreddo did not choose Plaintiff because Plaintiff indicated that: (1) she believed that the clerks could work a flex schedule; and (2) she wanted to supervise and to do her own thing. (Sfreddo Dep. at 42–43). Sfreddo chose Walker because of her 10 years of experience in the legal/court setting, five years of experience with the Juvenile Court, her high school degree, her paralegal certificate, and her prior supervisory experience. (Sfreddo Dep. at 37). Also, Sfreddo believed that Walker was going in the same direction as she. (*Id.* at 73, 80).

Sfreddo prepared a selection memo for the HR Department concerning Walker's selection for the JAS position. (D ¶ 50). Sfreddo asked Walker to provide additional information to assist Sfreddo in listing the details of Walker's experience. (D ¶ 51). After informing Walker that she was the selected candidate, Sfreddo asked Walker to provide supporting documentation about her past supervisory experience, which prompted Walker to provide a letter from Judge Dodd in the Probate Court. (Walker Dep. at 15–16). Sfreddo received Judge Dodd's letter on or after April 25. (Sfreddo Dep. at 62).

*F. Plaintiff's Complaints of Discrimination*

*1. Civil Service Appeal*

Plaintiff initiated a Civil Service complaint of the JAT III promotion decision. (Keaton Dep. at 104). Plaintiff dropped her Civil Service complaint to pursue her discrimination claims through the Equal Employment Opportunity Commission. ("EEOC"). (*Id.*)

*2. EEOC Proceedings*

On June 11, 2005, Plaintiff filed a charge of discrimination with the EEOC concerning Defendants' Clerk and JAS promotion decisions. (EEOC Charge in Doc. 1 at Exh. A). Cobb County informed the EEOC that it chose Sfreddo for the Clerk position because Sfreddo: (1) had a high school diploma; (2) had 18 years of experience with the juvenile court, which gave her a "wealth of experience"; and (3) received supervisor training. Cobb County noted that Plaintiff only had 3.5 years of experience with the Juvenile Court. (EEOC Position Statement at 3 in Exh. 20, Doc. 34).

Cobb County informed the EEOC that it chose Walker over Plaintiff for the JAS position because Walker was best-suited for the position in that she had: (1) 10 years experience in legal/court settings; (2) 5 years experience at the Juvenile Court; (3) a high school degree; (4) a paralegal certificate; and (5) prior supervisory experience. In contrast, Cobb indicated that Plaintiff did not have prior supervisory experience. (*Id.* at 4).

The EEOC determined on March 15, 2006, that there was no discrimination in

---

**6.** Sfreddo discussed her decision with Marchant–Wellmon. (D ¶ 34). Marchant–Wellmon possessed the ultimate authority to make the JAS selection, (P ¶ 92), but Marchant–Wellmon did not tell Sfreddo whom to select,

(D ¶ 35). Instead, she told Sfreddo that she agreed with Sfreddo's selection after Sfreddo presented her case. (Marchant–Wellmon Dep. at 80).

the selection of Sfreddo over Plaintiff for the Clerk position because Sfreddo was more qualified. (EEOC Determ. at Exh. 22, Doc. 34). The EEOC found, however, that it was "more likely than not" that Keaton was discriminated against based on her race for the JAS position because: (1) Plaintiff had the preferred qualification of a four-year degree while Walker only had a GED; (2) Plaintiff had 7–years experience working in a court room and 3 years experience working in a law firm; (3) Walker's supervisory experience was 7 years prior to her selection for the JAS position; and (4) blacks were under-represented in the Juvenile Court given the number of qualified individuals in the Atlanta region. (*Id.*).

## III. SUMMARY JUDGMENT STANDARD

Summary judgment is proper when no genuine issue as to any material fact is present, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The movant carries the initial burden of "informing the court of the basis for its motion and of identifying those materials that demonstrate the absence of a genuine issue of material fact." *Rice–Lamar v. City of Fort Lauderdale*, 232 F.3d 836, 840 (11th Cir.2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

The nonmovant is then required "to go beyond the pleadings" and present competent evidence in the form of affidavits, depositions, admissions and the like, designating "specific facts showing that there is a genuine issue for trial." *Celotex*, 477

U.S. at 324, 106 S.Ct. 2548. "The mere existence of a scintilla of evidence" supporting the nonmovant's case is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[F]acts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, —— U.S. ——, ——, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* If the record does not blatantly contradict the nonmovant's version of events, the court must determine "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *See Anderson*, 477 U.S. at 252, 106 S.Ct. 2505; *see also EPL Inc. v. USA Federal Credit Union*, 173 F.3d 1356, 1362 (11th Cir.1999); *Duke v. Cleland*, 884 F.Supp. 511, 514 (N.D.Ga. 1995).

## IV. DISCUSSION

### A. Legal Frameworks

■ Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e–2(a)(1). Section 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities se-

cured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. Section 1983 does not create any substantive rights, but instead, creates a remedy for the deprivation of Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment. *See City of Hialeah, Fla. v. Rojas,* 311 F.3d 1096, 1103 n. 1 (11th Cir.2002) (citing *Almand v. DeKalb County, Ga.,* 103 F.3d 1510, 1512 (11th Cir.1997)).

■ When a plaintiff brings Title VII claims and Fourteenth Amendment claims through § 1983, the Eleventh Circuit has stated:

Although the Supreme Court "do[es] not regard as identical the constraints of Title VII and the Federal Constitution," *Johnson v. Transp. Agency, Santa Clara County, Ca.,* 480 U.S. 616, 632[, 107 S.Ct. 1442, 94 L.Ed.2d 615], ... (1987), "[w]hen section 1983 is used as a parallel remedy for violation ... of Title VII, the elements of the two causes of action are the same." *Hardin v. Stynchcomb,* 691 F.2d 1364, 1369 n. 16 (11th Cir.1982) (citing *Whiting v. Jackson State Univ.,* 616 F.2d 116, 123 (5th Cir. 1980)).

*Underwood v. Perry County Comm'n,* 431 F.3d 788, 793 (11th Cir.2005). As a result, this Court uses the same framework to evaluate Title VII claims and Equal Protection race discrimination claims brought under § 1983. *See id.*

■ When a party relies on circumstantial evidence, as in the instant case, courts use the familiar *McDonnell Douglas* burden-shifting framework to evaluate Title VII and § 1983 claims. *Id.; Koch v. Rugg,* 221 F.3d 1283, 1297 n. 31 (11th Cir.2000). Under the *McDonnell Douglas* framework, a plaintiff must first establish a *prima facie* case of race discrimination.

If the plaintiff establishes a *prima facie* case, the defendant has the burden of producing a legitimate, nondiscriminatory reason for taking the employment decision. Once the defendant meets its burden of production, the plaintiff has the burden of proving by a preponderance of evidence that the defendant's reason is a mere pretext for discrimination. *Harris v. Shelby County Bd. of Edu.,* 99 F.3d 1078, 1082–83 (11th Cir.1996). Despite this burden-shifting framework, the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.* (quoting *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

In the instant case, Defendants concede for purposes of summary judgment that Plaintiff can establish *prima facie* cases for both promotion decisions. [Doc. 25–2 at 8]. Plaintiff also appears to concede that Defendants have met their burden of producing legitimate, non-discriminatory reasons for not promoting Plaintiff to the Clerk or JAS positions. [*See* Doc. 33 at 6 (arguing that a jury could reasonably infer that the falsity of Defendants' reasons was a cover up for discrimination)]. As a result, the Court's discussion below will only examine whether Defendants' legitimate, nondiscriminatory reasons for not promoting Plaintiff are pretext for race discrimination.

*B. Pretext*

■ To establish pretext, a plaintiff must show that the defendant's proffered reason was not the true reason for the employment decision. *Jackson v. State of Ala. State Tenure Comm'n,* 405 F.3d 1276, 1289 (11th Cir.2005). This may be done "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by

showing that the employer's proffered explanation is unworthy of credence." *Id.* (quoting *Burdine,* 450 U.S. at 256, 101 S.Ct. 1089). The plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Id.* (quoting *Combs v. Plantation Patterns,* 106 F.3d 1519, 1538 (11th Cir.1997)). "The heart of the pretext inquiry is not whether the employee agrees with the reasons that the employer gives for the discharge, but whether the employer really was motivated by those reasons." *Standard v. A.B.E.L. Services, Inc.,* 161 F.3d 1318, 1333 (11th Cir.1998). A plaintiff meets its burden at summary judgment "by introducing evidence that could form the basis for a finding of facts, which when taken in the light most favorable to the non-moving party, could allow a jury to find by a preponderance of the evidence that the plaintiff has established pretext." *Hairston v. Gainesville Sun Pub. Co.,* 9 F.3d 913, 921 (11th Cir.1993). The plaintiff must introduce "significantly probative evidence" showing the defendant's reasons were pretext. *Brooks v. County Comm'n of Jefferson County, Ala.,* 446 F.3d 1160, 1163 (11th Cir.2006).

### 1. The Clerk Position

■ Defendants argue Marchant–Wellmon legitimately selected Sfreddo over Plaintiff for the Clerk position because Sfreddo was best-suited for the position. [Doc. 25–2 at 9]. Specifically, Defendants argue that the decision was not race-based because Sfreddo had 15 years more experience than Plaintiff in the Cobb County Juvenile Court. [*Id.* at 9–10]. Defendants assert that Plaintiff's possession of a four-year degree did not overcome the disparity in experience. [*Id.* at 11]. Defendants also contend that Plaintiff undermined her race discrimination claim concerning the Clerk position by stating that she would not have believed the decision to be race based if another white applicant had been chosen. [*Id.* at 10].

Plaintiff responds that she never conceded that had another individual been chosen, she would have considered Marchant–Wellmon's promotion decision to be without racial animus because she was answering a speculative question. [Doc. 33 at 6 n. 1]. Plaintiff next argues that Marchant–Wellmon's reasons for not promoting her were pretext for discrimination for three reasons. [*Id.* at 7–10]. First, Plaintiff argues that Marchant–Wellmon deviated from the job announcement by relying on experience instead of the experience related to the Clerk's job duties. [*Id.* at 7–9]. Specifically, Plaintiff argues that Sfreddo's experience in clerical positions was not consistent with the essential qualifications of the Clerk position. [*Id.* at 7]. Plaintiff notes that Sfreddo primarily performed clerical duties immediately preceding her selection as Clerk while Plaintiff handled deputy clerk duties for six years in Cobb County's Juvenile Court and Sumter County's Magistrate Court. [*Id.* at 7–8]. Plaintiff also asserts that she held a four-year college degree, a preferred criteria for the Clerk position, while Sfreddo had no college degree. [*Id.* at 8–9]. Plaintiff further contends that she and Sfreddo were equal on the objective criteria such as their interviews, personnel records, work records, and completing the *Stepping Up to Supervisor* program. [*Id.* at 9]. Second, Plaintiff appears to argue that she was more qualified than Sfreddo for the reasons stated above. [*See id.* at 7–9]. Third, Plaintiff argues that Marchant–Wellmon's long history of not hiring or promoting black employees is evidence of discrimination. [*Id.* at 9–10].

Defendants reply that Plaintiff cannot demonstrate that Marchant–Wellmon's promotion decision was discriminatory. [Doc. 41 at 4–6]. First, Defendants argue that there is no evidence that Marchant–Wellmon did anything discriminatory prior to the promotion decision. [*Id.* at 4]. Second, Defendants argue that Plaintiff's statistical argument concerning Marchant–Wellmon's hiring history is without merit because she has not shown that minority applicants applied for positions or that these applicants were better qualified. [*Id.*]. Third, Defendants argue that the decision to hire an African–American following Plaintiff's discrimination claim is not evidence of pretext and Plaintiff has failed to cite to any authority to show that it is evidence of pretext. [*Id.* at 5]. Finally, Defendants argue that Plaintiff's qualifications argument does not demonstrate pretext because Sfreddo has more experience and another white applicant with a college degree was not chosen. [*Id.* at 5–6].

### a. *Plaintiff's Alleged Concession*

The Court agrees with Plaintiff that her statement that she would not have believed that she was a victim of race discrimination had another candidate been selected for the Clerk position does not undercut her case. Under the Federal Rules of evidence, relevant evidence is generally admissible evidence. FED. R.EVID. 402. Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R.EVID. 401. That Plaintiff might not have considered Marchant–Wellmon's decision discriminatory had Marchant–Wellmon selected a white candidate is not relevant evidence. The issue before the Court is whether Marchant–Wellmon intentionally discriminated against Plaintiff in promoting Sfreddo over Plaintiff. Therefore, Plaintiff's opinion about a hypothetical selection of another candidate does not make it less probable that the choice of Sfreddo was not discriminatory.

Also, the Court finds that Plaintiff's testimony is not admissible as opinion testimony. Opinion testimony is admissible if it is: (1) rationally based on the perception of the witness; (2) helpful to a clear understanding of a determination of a fact at issue; and (3) not based on scientific, technical, or other specialized knowledge. FED.R.EVID. 701. As a result, speculative testimony is generally not admissible because it is not based on the witness's perception. *See Washington v. Dep't of Transp.,* 8 F.3d 296, 300 (5th Cir.1993). Plaintiff's opinion about an event that did not occur is mere speculation. As a result, Plaintiff's concession is not admissible and therefore cannot undercut her case.

### b. *Deviation from the Job Announcement*

As summarized above, Plaintiff argues that Marchant–Wellmon deviated from the job announcement by relying on experience instead of the experience related to the Clerk job duties.[7] [Doc. 33 at 7–9].

---

**7.** The Clerk of Juvenile Court job announcement listed the essential functions and the minimum requirements of the Clerk job. The minimum requirements were: (1) high school diploma or GED, but a four-year college degree was preferred; (2) extensive knowledge of court procedures; (3) knowledge of applicable laws and regulations; and (4) minimum of three years of related experience. The essential functions of the Clerk job were as follows: (1) planning, allocating, and monitoring time, people, and resources to ensure efficient organization and completion of work; (2) carrying out supervisory responsibility in accordance with county policies; (3) assisting others to refine work outputs or to

■ Deviation from a policy or procedure may be evidence of pretext if the deviation occurred in a discriminatory manner. *See Walker v. Prudential Property and Cas. Ins. Co.*, 286 F.3d 1270, 1279 (11th Cir.2002) ("The bending of established rules may, of course, be suggestive of discrimination."); *Rojas v. Florida*, 285 F.3d 1339, 1344 n. 4 (11th Cir.2002) ("To establish pretext, a plaintiff must show that the deviation from policy occurred in a discriminatory manner."). As a result, an employer's deviation from the requirements of its job listing may be evidence of pretext. *Mohammed v. Callaway*, 698 F.2d 395, 400–01 (10th Cir.1983) (finding employer's departure from the employment criteria in a job announcement to the detriment of a minority employee was probative of discrimination).

The Court finds no evidence of pretext based on any deviations from the essential functions aspect of the Clerk job announcement. First, the parties do not dispute that Sfreddo met the minimum requirements of the Clerk job. Thus, she is not disqualified from being the Clerk, (*see* Hagler Dep. at 23), and is at least minimally qualified.[8] Second, the essential requirements for the Clerk job describe the role of the Clerk. The Court is unaware of any evidence that an applicant must meet these essential requirements of a job, but the Court notes that a hiring official is expected to use the essential requirements to evaluate candidates for a position. (*See* Hagler Dep. at 23–24). Thus, that an applicant does not meet the essential requirements does not demonstrate pretext because there is no evidence that a candidate must meet these essential requirements.

■ Plaintiff believes Sfreddo's past work history does not show that she could perform the essential functions of the Clerk job. This argument does not suggest pretext. Instead, it places the Court in the role of comparing Sfreddo's work history with that of the essential qualifications and comparing Plaintiff's educational and work histories with the essential requirements of the Clerk position. This is a role that the Court particularly is ill equipped to perform. Courts are not super-personnel departments that review the propriety of an employment decision. *See, e.g., Wilson*, 376 F.3d at 1092 ("The role of this Court 'is to prevent unlawful hiring practices, not to act as a super personnel department that second-guesses employers' business judgments.'") (quoting *Lee v. GTE Florida, Inc.*, 226 F.3d 1249, 1254 (11th Cir.2000)). Unlike Marchant–Wellmon, the Court is unfamiliar with the operations of the Juvenile Court and specifically Sfreddo's various roles in the Court. As a result, the Court cannot determine whether Sfreddo's roles in the Juvenile Court adequately prepared her for the essential functions of the Clerk position.

resolve problems; (4) monitoring and communicating policies, procedures, and standards to identify and correct deficiencies or problems; (5) developing and implementing accounting controls, policies, and procedures; and (6) performing other related duties. (Clerk Announcement at Exh. 6 in Doc. 34).

8. The Court recognizes that Hagler's testimony dealt with classified employees. (Hagler Dep. at 23). The Clerk position is an unclassified position, which generally means that HR Department does not have jurisdiction over the Clerk, unless the Juvenile Court chooses to use the services of the HR Department for recruitment. (*See id.* at 12–13). As a result, the Court assumes that the HR policies discussed above applied to the Clerk position because the Juvenile Court used the HR department in recruiting the Clerk. (*See* Hagler Dep. at 13). If this Court's assumption is incorrect, then the Court concludes that Plaintiff has failed to provide any evidence as to how to consider the Clerk job announcement.

Nor can the Court determine whether one candidate's work history is better suited for the essential functions of the Clerk position than the other candidate.

The Court also notes that Marchant–Wellmon's decision to choose Sfreddo as the Clerk is not implausible given Sfreddo's background at the Juvenile Court. It is undisputed that Sfreddo's work for two judges from 2000 to 2005 was clerical. (Marchant–Wellmon Dep. at 45; P ¶¶ 43–44). However, Sfreddo's work history does not merely encompass clerical work because she had a five-year tenure as a JAT–III, in which she had supervisory experience. (Sfreddo Dep. at 17–18; P ¶ 46). Also, Sfreddo, like Plaintiff, completed the Stepping Up for Supervisor course. (D ¶ 16). With this evidence, this Court simply cannot find that Sfreddo's experience is incompatible with the essential requirements of the Clerk position. In the absence of evidence showing that Defendants' comparison of Sfreddo's employment history with the essential requirements of the Clerk position is discriminatory, Plaintiff essentially argues that Marchant–Wellmon's decision was a poor decision. See Rojas, 285 F.3d at 1344 n. 4 (noting that deviation from policy is not pretext unless deviation occurred in discriminatory manner). But, this Court's role is not to second guess an employer's judgment. See Chapman v. AI Transport, 229 F.3d 1012, 1030 (11th Cir.2000) (en banc); Nix v. WLCY Radio/Rahall Commc'ns, 738 F.2d 1181, 1187 (11th Cir. 1984) ("While an employer's judgment or course of action may seem poor or erroneous to outsiders, the relevant question is simply whether the given reason was a pretext for illegal discrimination."). As a result, the Court fails to find pretext on the basis that Marchant–Wellmon improperly evaluated Sfreddo's qualifications when comparing them with the essential functions of the Clerk position.

### c. Plaintiff's Qualifications

Plaintiff appears to argue that her superior qualifications demonstrate that Marchant–Wellmon's choice of Sfreddo was discriminatory. [Doc. 33 at 7–9].

"[Q]ualifications evidence may suffice, at least in some circumstances, to show pretext." See Ash v. Tyson, 546 U.S. 454, 457, 126 S.Ct. 1195, 1197, 163 L.Ed.2d 1053 (2006). To make a case of pretext based on qualifications, "a plaintiff must show that the disparities between the successful applicant's and her own qualifications were 'of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff.'" Brooks, 446 F.3d at 1163 (quoting Cooper v. Southern Co., 390 F.3d 695, 732 (11th Cir.2004)).

■ The Court concludes that Plaintiff cannot establish pretext based on having superior qualifications than Sfreddo. Plaintiff has a four-year college degree, (Keaton Dep. at 16–17), while Sfreddo only has a high school diploma, (D ¶ 15). This disparity in educational levels is not of such weight that no reasonable person could have chosen Sfreddo over Plaintiff given the other evidence in the record. Sfreddo had worked in the Juvenile Court for 18 years, (D ¶ 18), while Plaintiff had only worked at the court for less than 4 years at the time of the promotion decision, (see P ¶¶ 1, 24). Sfreddo, like Plaintiff, worked as a JAT–III and completed the Stepping Up to Supervisor course. (Sfreddo Dep. at 17–18; D ¶ 16). In addition, Sfreddo worked for two judges (albeit performing mostly clerical work). (Marchant–Wellmon Dep. at 45; P ¶¶ 43–44; Sfreddo Dep. at 14–17). Based on Sfreddo's experience and performance of a variety of jobs in the Juvenile Court, the Court

finds that Plaintiff cannot establish pretext by arguing about the disparity in qualifications.

#### d. Marchant–Wellmon's History of Hiring and Promoting

Plaintiff finally argues that Marchant–Wellmon's failure to hire or promote African–American individuals is further evidence of discrimination. [Doc. 33 at 9–10].

■ "Statistical evidence is an appropriate method for demonstrating both a prima facie case of discrimination and pretext." *Brown v. American Honda Motor Co., Inc.,* 939 F.2d 946, 952 (11th Cir.1991). "Statistics ..., however, without an analytic foundation, are virtually meaningless." *Id.* "To say that very few blacks have been selected by [an employer] does not say a great deal about [the employer's] practices unless [a court] know[s] how many blacks have applied and failed and compare that to the success rate of equally qualified white applicants." *Id.*

■ The Court concludes that Marchant–Wellmon's hiring and promotion history provides no evidence of pretext. Plaintiff has not identified any evidence concerning the racial makeup of the applicant pools for the positions that Marchant–Wellmon hired. [*See* Doc. 33 at 9]. It may be true that Marchant–Wellmon has never had an African–American employee directly report to her and has hired only one African–American employee during her 16–year history. (*See* Marchant–Wellmon Dep. at 21–24). Without information about the applicant pools for these past employment decisions, the Court cannot find that an issue of material fact exists based on this raw data. *See Pippin v. Burlington Resources Oil And Gas Co.,* 440 F.3d 1186, 1198 (10th Cir.2006) (finding no evidence of pretext where Plaintiff showed that 14 of 19 terminated employees were in protected class because this statistic did not consider the different individuals' circumstances, skills, or prior performances); *Roberson v. Snow,* 404 F.Supp.2d 79, 91–92 (D.D.C.2005) (finding no evidence of pretext on the basis of a history of not promoting black employees because plaintiff "failed to show actual statistics comparing rates of promotion at [employer] between similarly situated black and white employees, or even statistics comparing rates of hiring black and white applicants to their presence in the applicant pool"); *English v. CSA Equipment Co., LLC,* No. 05–cv–0312, 2006 WL 2456030, at * 18 (S.D.Ala. Aug.22, 2006) (finding plaintiff failed to show pretext on the basis of employer's hiring history because he failed to identify evidence that prior decisions were discriminatory); *see also Brown,* 939 F.2d at 952–53 (holding that although only 2 out of 860 automotive dealers were black, this statistic did not demonstrate pretext because there was no information about the number of blacks who applied for the dealerships).

Based on the above discussion, the Court concludes Plaintiff has failed to demonstrate that Defendants' legitimate, nondiscriminatory reasons for promoting Sfreddo over Plaintiff is pretext for discrimination. Plaintiff's pretext arguments taken separately or in combination simply fail to create an issue of material fact. Accordingly, the Court **RECOMMENDS** that summary judgment be **GRANTED** in Defendants' favor on Plaintiff's Title VII and § 1983 claims concerning the promotion of Sfreddo over Plaintiff to the Clerk position.

#### 2. The JAS Position

■ Defendants argue that Walker's greater experience, prior supervisory experience, and Plaintiff's answers to certain interview questions were legitimate, nondiscriminatory reasons for promoting

Walker instead of Plaintiff. [Doc. 25–2 at 14]. Defendants contend that these reasons are not pretextual because: (1) Sfreddo never made any racial comments; (2) Plaintiff never had problems with Sfreddo; and (3) Plaintiff cannot identify any evidence of race-based discrimination. [*Id.* at 15]. Plaintiff responds with 13 arguments explaining why Defendants' reasons for not promoting her to the JAS position are pretext for discrimination. [Doc. 33 at 11–25]. Defendants reply that Plaintiff's shotgun approach does not demonstrate pretext, but instead shows only that Plaintiff disagrees with the promotion decision. [Doc. 41 at 6–7].

### a. Plaintiff's Declaration

■ As an initial matter, Defendants object to portions of Plaintiff's declaration because it contradicts her deposition testimony in which Plaintiff allegedly stated that: (1) courtroom clerks could work flexible schedules; and (2) Plaintiff wanted to be left alone to do her job without interference from the Clerk. [Doc. 41 at 8]. " 'When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact [for summary judgment], that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony.' " *McCormick v. City of Fort Lauderdale,* 333 F.3d 1234, 1240 n. 7 (11th Cir.2003) (quoting *Van T. Junkins and Assoc., Inc. v. U.S. Industries, Inc.,* 736 F.2d 656, 657 (11th Cir.1984)). As a result, a Court may disregard the conflicting affidavit as a sham. *Rollins v. TechSouth, Inc.,* 833 F.2d 1525, 1530 (11th Cir.1987). However, this rule is applied "sparingly" and only when there is an "inherent inconsistency" between the affidavit and the deposition testimony. *Id.*

### Flexible Hours for Clerks

The Court concludes that there is no conflict between Plaintiff's deposition testimony and her declaration testimony concerning flexible hours for clerks. Plaintiff provided the following testimony during her deposition:

Q. Was there any discussion about scheduling?

A. Scheduling?

Q. Flexible schedules?

A. Yes, sir, there was a discussion about flexible schedules.

Q. Can you tell me about that?

A. I believe one of the courtroom clerks was a calendar clerk before she became a courtroom clerk, and when she was a calendar clerk, her hours were seven to four or something. I think she had asked me, did I believe that was fair or okay or something to that effect.

And I told her that I felt that if the employee felt that that time frame enabled them to get their work done, that I didn't see a problem with it. I think Ms. Marchant–Wellmon pointed out that if other employees thought, well that's kind of unfair, we have to leave at five, she can leave at four, what would be my response to that.

I told her, I certainly didn't want to be unfair to anyone.

Q. Anything else you remember about that portion of the discussion?

A. Ms. Marchant–Wellmon had emphasized, she said yes, because fairness is important. I wouldn't want anyone to think that they were being treated unfairly or something to that effect. And I agreed. I certainly didn't want to mistreat anyone.

(Keaton Dep. at 71–72). Plaintiff's declaration states the following:

I did not make any statement during the interview for the JAS position that courtroom clerks could work four-day work weeks or that it was feasible for them to do so. I did not make any statement that could be construed in such a manner.

(Keaton Decl. ¶ 7 at Exh. 1, Doc. 34). The declaration and deposition testimony refer to two different situations. The declaration refers to a four-day work week while the deposition testimony refers to a 7:00 am to 4:00 pm work schedule. The Court fails to see how this evidence is contradictory given that it relates to two different schedules, *i.e.,* a 7:00 am to 4:00 pm schedule and a 4–day workweek schedule.

**Plaintiff's Preference to Work Alone**

The Court concludes that Plaintiff's declaration does not contradict her deposition testimony concerning the interaction between the Clerk and the JAS. Plaintiff's declaration states:

I did not make any statement during the interview for the JAS position that I prefer to work alone and independently or that I wanted to be allowed to supervise [my] division alone or independently. I did not make any statement that could be construed in such a manner.

(Keaton Decl. ¶ 6 in Exh. 1, Doc. 34). During Plaintiff's deposition, the following exchange occurred:

Q. Did you and Ms. Sfreddo discuss the relationship between the clerk and the administrative supervisor?

A. I intimated to her that as a supervisor, that I would want to keep as much off of her as possible being the clerk, being that she has an entire office to run, that I wanted to keep as much off of her to deal with

as I could if I was selected for the position.

(Keaton Dep. at 72–73).

There is no inherent inconsistency between Plaintiff's declaration statement and her deposition testimony. Plaintiff's deposition testimony essentially indicated that she did not want to bother the Clerk because the Clerk would be busy. The declaration statement addresses whether Plaintiff testified that she wanted to work alone or independently. These two statements are not inherently contradictory, so the Court will consider Plaintiff's declaration.

*b. Plaintiff's Interview Responses*

Plaintiff argues that Sfreddo's decision not to promote her to the JAS position because of interview responses is pretext because Sfreddo's recollection about her responses is false. [Doc. 33 at 11–14].

An employee does not demonstrate pretext by establishing that the employer made a mistake. Instead, the plaintiff establishes pretext by showing that the employer did not give an honest explanation for its behavior. *See Walker v. NationsBank of Fla. N.A.,* 53 F.3d 1548, 1563 (11th Cir.1995); *see also Chapman,* 229 F.3d at 1030 (quoting *Elrod v. Sears, Roebuck & Co.,* 939 F.2d 1466, 1470 (11th Cir.1991)); *Newman v. Career Consultants, Inc.,* 470 F.Supp.2d 1333, 1346 (M.D.Ala.2007) ("As long as an employer's beliefs were honest, they can be mistaken without it implying that the employer acted with discriminatory motive."). The Court therefore examines whether Plaintiff has created an issue of material fact as to whether Defendants gave an honest explanation for the JAS promotion decision.

**Work Schedule**

Plaintiff argues that during her interview for the JAS position, she never sup-

ported a work schedule that would allow courtroom clerks to work 4 days per week as Sfreddo asserted. [Doc. 33 at 11–13].

The Court concludes that Plaintiff has created an issue of material fact as to whether Sfreddo and Marchant–Wellmon gave an honest explanation concerning Plaintiff's statements about the flexible schedule. Sfreddo and Marchant–Wellmon believed that Plaintiff would have allowed courtroom clerks to work 10 hours per day for 4 days a week. (*See* D ¶ 47; Sfreddo Dep. at 38; Marchant–Wellmon Dep. at 88). Plaintiff has provided contrary testimony that she did not make any statement during the interview for the JAS position that courtroom clerks could work a four-day work week. (Keaton Decl. ¶ 7 in Doc. 34, Exh. 1). Because Sfreddo and Marchant–Wellmon were both present during Plaintiff's interview, Plaintiff's denial that she made the statement about a four-day work week calls into question Sfreddo and Marchant–Wellmon's honest belief concerning this issue.

Also, Marchant–Wellmon's interview notes from Plaintiff's interview state: "4 day work week won't work for Clerks." (Keaton Notes in Exh. 15, Doc. 34). This note also suggests that Plaintiff never advocated a four-day work week for courtroom clerks, and that Marchant–Wellmon was aware that Plaintiff never supported a four-day work week. Given Plaintiff's testimony and Marchant–Wellmon's notes, the Court concludes that Plaintiff has created an issue of material fact as to whether the individual Defendants honestly believed that Plaintiff would have allowed court-room clerks to work four-day work weeks.[9]

Finally, the Court is unpersuaded that Plaintiff's deposition testimony supports Defendants' position concerning flexible schedules. Defendants did not promote Plaintiff to the JAS position because of Plaintiff's alleged "support for a work schedule that would allow courtroom clerks to work a 40–hour schedule four days a week." [Doc. 25–2 at 14]. The deposition testimony to which Defendants refer involved a flexible schedule in terms of working from 7:00 am to 4:00 pm, not in terms of working a four-day work week. (*See* Keaton Dep. at 71–72). At the most, this testimony indicates that Plaintiff was willing to allow courtroom deputies to work from 7:00 am to 4:00 pm.[10] Defendants never asserted that Walker was promoted over Plaintiff because Plaintiff believed that courtroom clerks could work this 7:00 am to 4:00 pm schedule.[11] Instead, they focused on Plaintiff's alleged statement that courtroom clerks could work four days per week for ten hours per day. Plaintiff's deposition testimony is therefore of no assistance to Defendants because it does not relate to the ten-hour workday schedule.

Based on the foregoing, Plaintiff has created an issue of material fact as to whether Defendants gave an honest explanation for not promoting Plaintiff.

### Plaintiff's Desire to Work Alone and Independently

Plaintiff argues that, contrary to Defendants' position, she never asserted during

---

9. Sfreddo's notes from Plaintiff's interview concerning the four-day work week are unclear. These notes do not mention the four-day work week. Instead, they cryptically state: "Not applies to every ct. rm. clerk—not good for all (Calendar Clerks maybe—able to get to the copiers)." (Keaton Notes in Exh. 16, Doc. 34).

10. The Court notes that it is not entirely clear whether this testimony related to the work hours for calendar clerks or the courtroom clerks.

11. The normal schedule for Juvenile Court employees was 8:00 am to 5:00 pm. (*See* Sfreddo Dep. at 41).

her interview that she preferred to work alone and independently. [Doc. 33 at 13–14].

The Court concludes that Plaintiff has created an issue of material fact concerning whether Defendants honestly believed that Plaintiff preferred to work alone. Concerning Plaintiff's expectations about the Clerk, Sfreddo testified that Plaintiff "wanted to supervise and pretty much be left to do her thing." (Sfreddo Dep. at 43). Marchant–Wellmon similarly testified that Plaintiff indicated that she preferred to work on her own and more independently. (Marchant–Wellmon Dep. at 89).

Plaintiff has provided a sworn statement directly contradicting Sfreddo and Marchant–Wellmon's contentions: "I did not make any statement during the interview for the JAS position that I prefer to work alone and independently or that I wanted to be allowed to supervise [Sfreddo's] division alone or independently. I did not make any statement that could be construed in such a manner." (Keaton Decl. ¶ 6 at Exh. 1 in Doc. 34). Plaintiff's deposition testimony regarding the question about the relationship between the JAS and Clerk is as follows: "I intimated to her that as a supervisor, that I would want to keep as much off of her as possible being the clerk, being that she has an entire office to run, that I wanted to keep as much off of her to deal with as I could if I was selected for the position." (Keaton Dep. at 72–73). Although it might have

been reasonable for Defendants to construe Plaintiff's statement as a statement about wanting to work independently, this Court's duty on summary judgment is to construe the evidence in a light most favorable to the non-moving party, which is Plaintiff in this instance. Plaintiff's testimony when viewed in her favor does not indicate that she wanted to be left alone, but only that she did not want to bother Sfreddo, especially in light of her declaration statement. As a result, the Court has two different versions by individuals who were present in the interview regarding the relationship between the Clerk and the JAS. Given the conflicting testimony, the Court concludes that Plaintiff has created an issue of material fact as to whether Defendants honestly believed that Plaintiff wanted to work alone instead of closely with the Clerk.

*c. Walker's Supervisory Experience*

Plaintiff argues that Sfreddo could not have determined that Walker had supervisory experience because Walker never held a supervisory position.[12] [Doc. 33 at 14–15].

The Court concludes that Plaintiff has created an issue of fact as to whether Sfreddo could honestly believe that Walker previously served as a back up supervisor and Walker supervised two employees as a deputy clerk in the Probate Court. The evidence indicates that Walker represent-

---

12. Sfreddo wrote a memorandum to Hagler, the HR Director, on April 25, 2005, providing written documentation for her decision to select Walker for the JAS position. In this memo, Sfreddo stated that Walker had served as "back-up for supervisor in her absence of closing files." Sfreddo also indicated that during Walker's time as a deputy clerk for the *Probate Court*, Walker *supervised two em-ployees*, set up training programs for employees of the Probate Court, and supervised employees while they were in training. (Apr. 25,

2005, Memo to Hagler at Exh. 18 in Doc. 34). Sfreddo claimed that this information about Walker was derived from the interview process. (Sfreddo Dep. at 65). In producing the legitimate, nondiscriminatory reason for promoting Walker instead of Plaintiff for the JAS position, Defendants explain that the decision was based in part on Walker's prior supervisory experience, identifying the April 25, 2005, memorandum as the evidence supporting this rationale. [Doc. 25–2 at 13–14].

ed to Sfreddo that she supervised employees, but Walker testified that she only told Sfreddo that she supervised two employees in the training program. (Walker Dep. at 49–50). Walker testified that she never supervised the two employees after they completed their training, (Walker Dep. at 49). As a result, Sfreddo's assertion that Walker supervised two employees while a clerk in the Probate Court is not entirely accurate in that Walker's supervisory role only lasted until the employees were trained. Plaintiff has therefore created an issue of fact as to whether Sfreddo gave an honest explanation by stating that Walker supervised two employees.

Also, Plaintiff has created an issue of fact as to whether Sfreddo gave an honest explanation that Walker served as a back up to a supervisor. Sfreddo indicated that Walker was a back up for supervisor in the April 25 memo, but Walker testified that she never served as a backup supervisor for anyone in the Juvenile Court. (Walker Dep. at 54). With this conflicting information, Plaintiff has created an issue of fact as to whether Sfreddo gave an honest explanation concerning Walker's backup supervisor role because this information allegedly came from Walker's interview, but Walker denies ever being a backup supervisor.

Although the Court concludes that Plaintiff has created issues of fact, the question remains whether these issues of fact are material. The Court concludes that they are. The April 25 memo upon which Defendants rely to document their legitimate, nondiscriminatory reasons for promoting Walker instead of Plaintiff listed four instances of prior supervisory duties: (1) Walker was a backup supervisor; (2) Walker supervised two employees at Probate Court; (3) Walker supervised those in training at Probate Court; and (4) Walker supervised inmates who transported records. (Apr. 25, 2005, Memo at Exh. 18 in Doc. 34). As discussed above, Plaintiff has demonstrated that issues of fact exist as to whether Sfreddo gave an honest explanation regarding the first two instances of Walker's supervisory experience. As a result, Plaintiff has raised questions concerning Defendants' reliance of Walker's supervisory experience because the scope of Walker's experience appears to be more limited than what Defendants allege it to be. The Court recognizes that the memorandum supports the conclusion that Walker had prior supervisory experience given that there is no evidence contradicting the statements that she supervised employees in training and supervised inmates. (See Walker Dep. at 27–29, 34). However, Plaintiff has shown that Walker's supervisory experience was not as extensive as Sfreddo indicated in the April 25 memorandum. As a result, an issue of fact exists as to whether Sfreddo gave an honest explanation concerning the scope of Walker's supervisory experience. Defendants have relied on Sfreddo's memorandum to show Walker's prior supervisory experience. [Doc. 25–2 at 13]. Thus, Plaintiff has created an issue of material fact because Plaintiff has presented evidence that the memorandum was not accurate and that Sfreddo could not have honestly believed that Walker had the extent of supervisory experience listed in the April 25 memorandum. In other words, Plaintiff has created an issue of material fact by demonstrating that the document relied upon to produce Defendants' legitimate, nondiscriminatory reasons was not accurate concerning Walker's supervisory experience. By showing that the information in this memorandum, which Defendants relied upon, was not accurate, Plaintiff has created an issue of material fact concerning whether Walker's supervisory experience was a legitimate reason for promoting Walker instead of Plaintiff.

#### d. Walker's Experience

Plaintiff contends that Defendants made a conclusory assertion that Walker was selected because of her greater experience. Plaintiff also argues that Walker did not have greater experience and Defendant failed to identify facts to demonstrate that Walker's experience was better suited for the JAS position. [Doc. 33 at 16].

The Court concludes that Plaintiff has not created an issue of material fact concerning whether Walker's greater experience was pretext. Plaintiff concedes that Walker had one more year of experience in the Juvenile Court than Plaintiff. [Doc. 33 at 16]. As a result, it is undisputed that Walker had more experience in the Juvenile Court.

As for Plaintiff's assertion that Defendant made a conclusory assertion that Walker was selected because she was more qualified, the Court agrees. Defendants' brief fails to cite to any evidence from Defendants stating that they chose Walker over Plaintiff because Walker had more experience. Instead, Defendants cite to Sfreddo's April 25, 2005, memorandum, which lists Walker's legal/court experience, and Exhibit 8 from Marchant–Wellmon's deposition, which contains the applicant materials for the JAS position. [See Doc. 25–2 at 13]. Although this evidence shows the experience of Walker and Plaintiff, it does not show that Defendants chose Walker over Plaintiff because of Walker's greater experience. To make this showing, Defendants needed testimony that Walker's greater experience was the reason for promoting her instead of Plaintiff. Defendants have not cited to this evidence in their brief, thereby rendering the statement that Walker was chosen because she had more experience conclusory.

The Court does not find that this conclusory statement is evidence of pretext. Plaintiff cannot deny that there is evidence in the summary judgment record showing that Walker was selected instead of Plaintiff because Walker had more experience. First, Defendants' interrogatory response indicated that Walker was chosen over Plaintiff because of Walker's greater experience. (See Marchant–Wellmon Dep. at Exh. 2). Second, Sfreddo's deposition testimony reiterated that the interrogatory response was true. (Sfreddo Dep. at 36–37, 39). Third, Marchant–Wellmon's testimony also reiterated that Walker had more experience in the Juvenile Court. (Marchant–Wellmon Dep. at 91). Thus, the conclusory nature of the summary judgment brief does not establish pretext because the record evidence demonstrates that Walker was chosen because she had more experience in the Juvenile Court.

Finally, to the extent that Plaintiff argues that Defendants should have explained how Walker's experience made her better qualified, the Court finds that this argument is essentially asking the Court to review the personnel decision. The Court fails to see how the lack of such an explanation demonstrates pretext for discrimination. For example, Plaintiff has not identified any evidence requiring Cobb County hiring managers to provide this sort of explanation. Also, it is appropriate for an employer to assert that another employee has more experience. See Stuart v. Jefferson County Dep't of Human Res., 152 Fed.Appx. 798, 802 (11th Cir.2005) ("The defendants, however, proffered legitimate, non-discriminatory reasons for not selecting [plaintiff], namely that the female chosen for the position . . . had more experience for the position at issue."). Plaintiff essentially challenges the wisdom of the evaluation process, which does not establish pretext. See Alexander v. Fulton County, 207 F.3d 1303, 1339 (11th Cir.2000) ("[A] plaintiff may not establish that an employer's proffered rea-

son is pretextual merely by questioning the wisdom of the employer's reasons, at least not where . . . the reason is one that might motivate a reasonable employer.") (quoting *Combs*, 106 F.3d at 1528). As a result, the Court concludes that Plaintiff has not established pretext through Defendants' evaluation of Walker's experience.

### e. Job Criteria

Plaintiff argues that Defendants ignored relevant criteria of the JAS position because Plaintiff held a four-year degree and Walker did not, thereby indicating that Defendants promoted a less qualified candidate. [Doc. 33 at 16–17].

The Court recognizes that there is some legal authority that would support the Court's rejection of Plaintiff's argument that Defendant could not have found Walker more qualified because she did not possess a four-year college degree, a preferred criterion for the JAS position. First, Plaintiff has not shown that the failure to follow the preferred criteria was discriminatory because she has not provided any evidence that the policy was applied discriminatorily. *See Rojas*, 285 F.3d at 1344 n. 4 (indicating that a failure to follow policy is pretext when plaintiff demonstrates that the failure was discriminatory). Second, a plaintiff is not permitted to "substitute his business judgment for that of the employer." *Chapman*, 229 F.3d at 1030. This Court must look to whether the proffered reason "might motivate a reasonable employer." *Id.* at 1031. It might be reasonable for an employer to decide against choosing an applicant who has the preferred criteria for a position when the chosen candidate met the minimum requirements for the position and had additional experience. *See Hillemann v. Univ. of Central Fla.*, 411 F.Supp.2d 1354, 1366 (M.D.Fla.2004) ("To survive summary judgment, [a plaintiff] must show

that [the employer] not only hired the wrong candidates, but that it did so for the wrong reasons.").

However, the Court concludes that combined with the other evidence of pretext, as discussed above and below, Defendants' decision to promote Walker over Plaintiff despite Plaintiff's attainment of the preferred criteria provides some evidence of pretext. One of the preferred criteria for the JAS position was a college degree. (P ¶ 48). Plaintiff met this preferred criteria, but Walker did not. (Keaton Dep. at 16–17; P ¶ 61). Given that Plaintiff has shown issues of material fact concerning some of the reasons for not promoting Walker, the Court concludes that the failure to give the advantage to Plaintiff because she met the preferred criteria of a college degree provides some pretext evidence. *See Gillespie v. Rank Video Servs. Am., Inc.*, No. 95–C–5767, 1997 WL 543105 at *7–8 (N.D.Ill. Sept.2, 1997) (failure to follow preferred criteria was evidence of discrimination when comparators who did not have preferred criteria were promoted while plaintiff was not).

### f. Shifting Criteria

Plaintiff complains that Defendants used shifting criteria in their selection of Walker over Plaintiff regarding the Stepping Up to Supervisor criterion. Specifically, Plaintiff argues that Marchant–Wellmon indicated that the Stepping Up to Supervisor course was a significant factor in the JAS position but neither Walker nor Plaintiff had an advantage because they both had taken the course while Sfreddo testified that Walker had not completed the course because she never mentioned it in her interview. [Doc. 33 at 17–18].

The Court concludes that Plaintiff has not demonstrated pretext with her argument concerning shifting criteria. Marchant–Wellmon testified that in promoting

Sfreddo instead of Plaintiff for the Clerk position the Stepping Up to Supervisor course was significant. (Marchant–Wellmon Dep. at 72). However, Marchant–Wellmon clearly testified that the Stepping Up to Supervisor course was not a criteria in the JAS promotion decision. (*Id.* at 90). Instead, the course was only a factor for the Clerk position. (*Id.* at 91). Sfreddo's testimony is not to the contrary because there is no indication that she believed the Stepping Up to Supervisor course was a factor, especially given her testimony that she would have expected Walker to mention the course had she taken it. (Sfreddo Dep. at 9–10). As a result, the testimony merely shows that the Stepping Up to Supervisor course was a factor in the Clerk promotion, but not the JAS promotion. That different criteria were used in deciding promotions for two different positions does not appear to be exceptional or suspicious especially given the absence of any testimony that the course was supposed to be considered for the JAS position. As a result, the Court finds that Defendants' use of the Stepping Up to Supervisor course as a criterion for the Clerk promotion but not for the JAS promotion does not establish pretext.

### g. Plaintiff's Rating for the Clerk Position

Plaintiff argues that it was inconsistent to choose Walker over Plaintiff for the JAS position because Plaintiff had been ranked higher than Walker as a candidate for the Clerk position, which was a position with more duties and responsibilities than the JAS position. [Doc. 33 at 19–20].

The Court concludes that Marchant–Wellmon's ratings for Plaintiff and Walker for the Clerk position are irrelevant for the JAS position and therefore do not establish pretext. Marchant–Wellmon was the sole decisionmaker regarding the Clerk promotion. However, Sfreddo was the hiring manager for the JAS promotion while Marchant–Wellmon played an advisory role who could override Sfreddo's decision if she disagreed with it. (Marchant–Wellmon Dep. at 92–93). This distinction in decisionmakers demonstrates that Marchant–Wellmon's ratings for the Clerk position were not significant in the JAS promotion decision. First, the Clerk position was distinct from the JAS position. The Court recognizes that the JAS position was a subunit of the Clerk position, (P ¶¶ 23, 52), but Marchant–Wellmon's ranking was related only to the Clerk position. Second, Sfreddo had authority to make the JAS promotion decision after re-evaluating the applicants. (Marchant–Wellmon Dep. at 92–93). Marchant–Wellmon's ratings were not part of Sfreddo's decision-making process. In listing the criteria relied upon for making the JAS promotion decision, Sfreddo listed the following criteria: education, work experience, court experience, and supervisory experience. (Sfreddo Dep. at 34–35). There is no indication that Sfreddo also considered Marchant–Wellmon's rankings. Although Marchant–Wellmon could have vetoed Sfreddo's decision, (*see* P ¶ 92), the Court's decision remains the same given the distinct nature of the JAS and Clerk positions and Sfreddo's primary role in the decision-making process for the JAS promotion. The Court therefore finds that Plaintiff's higher rank for the Clerk position does not provide evidence of pretext.

### h. Post Hoc Reasons for Selecting Walker

Plaintiff argues that Defendants provided post hoc reasons for promoting Walker because after selecting Walker for the JAS position, Sfreddo then requested that Walker provide documentation about her

supervisory duties.[13] [Doc. 33 at 20].

■ Evidence of a post-hoc attempt to justify an employment decision may be evidence of pretext. *See Aufdencamp v. Irene Stacy Community Mental Health Ctr.,* 234 F.Supp.2d 515, 518 (W.D.Pa. 2002); *Zarnegar v. St. Paul Fire & Marine Ins. Co.,* No. 93–C–7744, 1995 WL 656675, at *7 n. 5 (N.D.Ill. Nov.6, 1995) ("After-the-fact attempts to provide documentation justifying an employment decision may be evidence of pretext.") (citing *Futrell v. J.I. Case,* 38 F.3d 342, 349 (7th Cir.1994)); *see also Rosenfield v. Wellington Leisure Prods., Inc.,* 827 F.2d 1493, 1496 (11th Cir.1987) (noting that employer's decision to obtain evidence after the fact suggested pretext); *Metzler v. Fed. Home Loan Bank of Topeka,* 464 F.3d 1164, 1177 (10th Cir.2006) (citing cases for the proposition that "suspicious timing of ... documentation—after the fact and in anticipation of litigation—reasonably gave rise to an inference of pretext").

The Court concludes that the after-the-fact request for documentation provides some evidence of pretext. The evidence demonstrates that Sfreddo first decided to promote Walker and then requested that Walker obtain documentation about her prior supervisory experience. (*See* Walker Dep. at 15–16). Sfreddo testified that she sought the information from Judge Dodd to confirm Walker's statement that she had prior supervisory background while working in Probate Court. (Sfreddo Dep. at 60–61). While Cobb County policy al-

lows for information to be confirmed after a hiring decision, (Hagler Dep. at 36), in the context of the facts of this case, a jury reasonably could question the validity of Cobb County's promotion decision by seeking documentation from the employee to support this decision after the fact.

The Court concludes that any factual variation between this case and *Rosenfield* and *Aufdencamp* amounts to a distinction without a difference. In those above-cited cases, the employer's after-the-fact attempt to provide documentation was to explain why the plaintiff experienced an adverse employment action. Here, Defendants after-the-fact actions concerned Walker, not Plaintiff. *See Rosenfield,* 827 F.2d at 1496 (noting that evidence of plaintiff's poor work performance was obtained after the fact); *Aufdencamp,* 234 F.Supp.2d at 518 (finding that a reasonable jury could conclude that evaluation of plaintiff constituted a post-hoc justification). Whether a post-hoc attempt is made to bolster the comparator or denigrate the Plaintiff, the result is the same: a reasonable fact-finder could view the attempt as evidence of pretext to mask unlawful discrimination.

Also, the evidence when viewed in a light most favorable to Plaintiff indicates that the documentation from Judge Dodd was obtained after Plaintiff orally complained about the promotion decision. The Court takes judicial notice that April 22, 2005, the day that Plaintiff learned of the JAS promotion decision, was a Friday.[14]

---

**13.** The undisputed evidence indicates that Sfreddo made the JAS promotion decision on April 22, a few hours after Plaintiff was interviewed. (P ¶ 106). This decision was made before Sfreddo possessed a letter from Judge Dodd documenting that Walker "was promoted to Judicial Administrative Technician III in a supervisory position." (Apr. 25, 2005, Dodd Letter at Exh. 17 in Doc. 34). Also, the evidence when viewed in Plaintiff's favor indi-

cates that Sfreddo requested further documentation from Walker after Sfreddo had informed Walker about the promotion decision. (Walker Dep. at 15).

**14.** "A court may take judicial notice of appropriate adjudicative facts at any stage in a proceeding, including at the summary judgment stage." *Dippin' Dots, Inc. v. Frosty*

Plaintiff testified that she verbally informed Marchant–Wellmon that the JAS promotion decision was wrong and that she wanted to challenge it. (Keaton Dep. at 110–11).[15] Plaintiff then testified that after Marchant–Wellmon informed Plaintiff that there was nothing Plaintiff could do and encouraged Plaintiff to apply for another position, Plaintiff indicated that she would think about it over the weekend. (*Id.* at 111). When viewed in a light most favorable to Plaintiff, this evidence suggests that Plaintiff orally complained to Marchant–Wellmon on Friday, April 22, 2005, because a weekend followed Plaintiff's oral complaint. Sfreddo asked Walker to provide documentation from Judge Dodd after informing Walker of her promotion. (Walker Dep. at 15). Sfreddo did not receive the letter from Judge Dodd listing Walker's supervisory experience un-

til April 25 at the earliest. (Sfreddo Dep. at 62). This document was therefore received after Plaintiff orally complained about the promotion decision.[16] Thus, it is reasonable to assume that Defendants obtained documentation from Dodd following Plaintiff's oral complaint. Without an explanation for this action, the Court concludes that the after-the-fact decision to obtain documentation provides some evidence of pretext.[17]

### i. Shifting Reasons for the Promotion Decision

Plaintiff argues that Defendants provided shifting reasons for the promotion decision in discovery and the EEOC response in that Defendants' EEOC response failed to mention Plaintiff's answers to interview questions.[18] [Doc. 33 at 21].

*Bites Distribution, LLC,* 369 F.3d 1197, 1204 (11th Cir.2004); Fed.R.Evid. 201(c), (f).

**15.** Plaintiff sent an email on Wednesday April 27 indicating that she believed that the decision was discriminatory. (*See* Marchant–Wellmon Dep. at 98, Pl. Exh. 9).

**16.** Sfreddo's deposition supports this conclusion because she testified that she prepared the April 25 memorandum to Hagler after Plaintiff complained that the promotion decision was discriminatory. (*See* Sfreddo Dep. at 68).

**17.** The Court recognizes that a contrary view of the evidence is just as reasonable: Plaintiff vaguely testified that she verbally complained to Marchant–Wellmon about the JAS promotion decision at the end of April after being told about the decision. (*See* Keaton Dep. at 110). She also testified that she sent an email stating the acts were discriminatory. (*See id.* at 111). This email was dated April 27. (*See* Marchant–Wellmon Dep. at 98, Pl. Exh. 9). As a result, a reasonable jury could conclude that this after-the-fact request that Walker provide a letter from Judge Dodd was not in response to Plaintiff's discrimination complaint. *Compare Zarnegar,* 1995 WL 656675, at *7 & n. 5 (intimating that memoranda

explaining a promotion decision that were created after a plaintiff complained of discrimination might be evidence of pretext). After all, as noted above, Cobb County policy allows for information to be confirmed after a hiring decision. (Hagler Dep. at 36). Sfreddo's testimony indicates that she sough information to confirm that Walker had prior supervisory experience in Probate Court. (Sfreddo Dep. at 60–61).

However, unless the record demonstrably makes one version of events blatantly unreasonable, the choice between which version to accept is for a jury.

**18.** Cobb County wrote in response to Plaintiff's EEOC charge that Plaintiff was not selected for the JAS position because: (1) Walker had significantly more experience with the Juvenile Court, (EEOC Position Statement at 1 in Exh. 20, Doc. 34); (2) Walker had 10 years experience in the legal/court setting, 5 years experience with the juvenile court, a high school degree and a paralegal certificate; and (3) Walker had prior supervisory experience. (*Id.* at 4). Defendants responded to Plaintiff's interrogatories by stating Walker was chosen over Plaintiff because: (1) Walker had greater experience with the Juvenile Court; (2) Walker had greater experience working for the County; (3) Walker had prior

"[A]n employer's failure to articulate clearly and consistently the reason for an employee's discharge may serve as evidence of pretext." *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1299 (11th Cir.2006); *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1194 (11th Cir.2004); *Bechtel Const. Co. v. Sec't of Labor*, 50 F.3d 926, 935 (11th Cir.1995). An employer is permitted, however, to elaborate on its reasons for taking an employment action. *See Standard*, 161 F.3d at 1332 (indicating that a more detailed explanation for a general reason is insufficient to establish pretext); *Rodgers v. U.S. Bank, N.A.*, 417 F.3d 845, 855 (8th Cir.2005). Also, an additional, but undisclosed, reason for an employment decision does not establish pretext. *Tidwell v. Carter Prods.*, 135 F.3d 1422, 1428 (11th Cir. 1998) (citing *Zaben v. Air Prods. & Chem., Inc.*, 129 F.3d 1453, 1458–59 (11th Cir. 1998)).

The Court concludes that Defendants have not provided shifting reasons in their JAS promotion decision. The Court recognizes that Defendants' interrogatory response provides an additional reason not contained in the EEOC position statement, namely that Plaintiff's responses to interview questions regarding alternative work schedules and interaction with the Clerk did not coincide with Sfreddo's vision. However, this reason does not conflict with those provided in the EEOC statement.

Instead, this reason is an additional reason that is in no way inconsistent with the prior reasons provided to the EEOC. Such an additional, nonconflicting statement is not evidence of pretext. *See Tidwell*, 135 F.3d at 1428; *Johnson v. Nordstrom, Inc.*, 260 F.3d 727, 733–34 (7th Cir.2001) (finding no pretext where employer "simply supplemented its explanations in the context of EEOC charges and litigation; there has been no retraction of any of its reasons for failing to promote [plaintiff] nor are any of its reasons inconsistent or conflicting").[19] *But see Dickson v. Amoco Performance Prods., Inc.*, 910 F.Supp. 629, 637 (N.D.Ga.1994) (Hull, J.) (finding pretext where defendant added an additional reason for terminating plaintiff in an answer to an interrogatory that was not provided to the EEOC or in the answer to the first interrogatory). In the absence of conflict between the reasons provided, the Court finds that the additional reason in the interrogatory response is not evidence of pretext.

*j. Walker's Representations in Her Application*

Plaintiff argues that Walker's false representations that she held a high school diploma and a paralegal degree in her JAS application demonstrate pretext because Walker should have been disqualified from applying for the JAS position for these false representations.[20] [Doc. 33 at 21–

---

supervisory experience with the County; and (4) Plaintiff's responses to interview questions regarding alternative work schedules and interaction with the Clerk did not coincide with Sfreddo's vision. (Def't Interrog. Resp. at unnumbered 3 in Exh. 19, Doc. 34).

19. Not only does Defendants' interrogatory response provide an additional reason, but also the interrogatory response is an elaboration on the reason given to Plaintiff when Sfreddo informed her that she was not going to be promoted. Specifically, Sfreddo in-

formed Plaintiff that she was not selected because she "was not going in the direction [Sfreddo] wanted to go." (Keaton Decl. ¶ 5 in Exh. 1, Doc. 34). Defendants' interrogatory response elaborates on the reasons given to Plaintiff when she was not promoted. Such an elaboration is not evidence of pretext. *See Standard*, 161 F.3d at 1332.

20. Under Cobb County policies, an employee's untruthfulness is grounds for termination or disqualification from the application process. (Hagler Dep. at 36–37, 40). Disciplin-

22]. Defendants argue that Walker's statements on her application do not show pretext because: (1) the JAS position required either a GED or high school diploma; (2) Sfreddo knew that Walker had a GED and paralegal certificate; (3) there is no evidence that Walker's false statements gave her any advantage; and (4) there is no evidence that Defendants' decision to overlook this mistake was discriminatory. [Doc. 41 at 9].

"[A]n employer's deviation from its own standard procedures may serve as evidence of pretext." *Hurlbert*, 439 F.3d at 1299. The Eleventh Circuit has "observed that deviation from company policy can be circumstantial evidence of discrimination, especially where the rules were bent or broken to give a non-minority applicant an advantage." *Ash v. Tyson Foods, Inc.*, 129 Fed.Appx. 529, 533 (11th Cir.2005), *rev'd on other grounds*, 546 U.S. 454, 126 S.Ct. 1195, 163 L.Ed.2d 1053 (2006) (citing *Carter v. Three Springs Res. Treatment*, 132 F.3d 635, 644 (11th Cir.1998); *Berg v. Fla. Dept. of Labor*, 163 F.3d 1251, 1255 (11th Cir.1998)). Also, "a plaintiff must show that the deviation from policy occurred in a discriminatory manner." *Rojas*, 285 F.3d at 1344 n. 4.

The Court concludes that Plaintiff has established pretext by showing that Defendants did not follow policy by promoting Walker despite her false statements. Walker clearly provided false statements on her application. (Walker Dep. at 22–24). It is reasonable to infer that Sfreddo knew that Walker provided false statements because Sfreddo was aware that Walker only had a GED and a paralegal certificate, not a high school diploma and

paralegal degree, (*See* D ¶ 41), and Sfreddo reviewed application materials before making the promotion decision, (P ¶ 58). Under Cobb County policy, Walker should have been disqualified from the promotion decision. (Hagler Dep. at 40). Instead of disqualification, Walker was promoted over Plaintiff. Thus, the non-minority applicant benefitted because of this failure to follow policy. It may be true that Walker's representations did not giver her any advantage and were honest mistakes, but on summary judgment, the Court must view the evidence in a light most favorable to Plaintiff. In this light, the evidence suggests that, under Cobb County policies, Walker should have been disqualified because of this false information. As a result, the Court concludes that Plaintiff has demonstrated pretext by showing that Cobb County promoted an individual who should have been disqualified from the position based on county policy.

### k. Sfreddo's Destruction of Her Notes Comparing Walker and Plaintiff

Plaintiff argues that Sfreddo's destruction of her notes comparing Walker and Keaton hid Sfreddo's true intent and violated federal law, thereby requiring a presumption in Plaintiff's favor regarding the destroyed documents. [Doc. 33 at 23].

Title VII requires employers to "make and keep such records relevant to the determinations of whether unlawful employment practices have been or are being committed." 42 U.S.C. § 2000e–8(c). The obligation to preserve records "was clearly designed to protect Title VII plaintiffs from an employer's destruction of possibly

---

ary action is necessary if the statement is truly false. (*Id.* at 43–44). An individual makes a false statement if she represents that she has a high school diploma but only has a GED. (*Id.* at 40). An individual should not represent that she has a degree when she only has a

certification. (*Id.* at 41). Walker testified that her application was not true when she indicated that she graduated from high school and suggested that she held a paralegal degree because she only had a GED and a paralegal certificate. (Walker Dep. at 22–24).

damaging evidence." *EEOC v. Am. Nat'l Bank*, 652 F.2d 1176, 1195 (4th Cir.1981). The EEOC's regulations provide that any personnel or employment record made or kept by a political jurisdiction, which include records involving promotion, "shall be preserved by the political jurisdiction for a period of 2 years from the date of the making of the record or the personnel action involved." 29 C.F.R. § 1602.31.[21] Application records, "which include resumes, cover letters, and any interview notes relevant to the hiring proceedings, are clearly encompassed within the types of records [§ ] 1602.31 seeks to preserve." *Shipley v. Dugan*, 874 F.Supp. 933, 939 (S.D.Ind.1995). "Employers are not required[, however,] to keep every single piece of scrap paper that various employees may create during" the employment decision process. *Rummery v. Illinois Bell Telephone Co.*, 250 F.3d 553, 558–59 (7th Cir.2001).

▆▆▆ "Several courts have held that destruction of evidence in violation of a regulation that requires its retention can give rise to an inference of spoliation." *Byrnie v. Town of Cromwell, Bd. of Edu.*, 243 F.3d 93, 108–09 (2d Cir.2001) (citing cases). The former Fifth Circuit has held that "[t]he adverse inference to be drawn from destruction of records is predicated on bad conduct of the defendant. 'Moreover, the circumstances of the act must manifest bad faith. Mere negligence is not enough, for it does not sustain an inference of consciousness of a weak case.'" *Vick v. Texas Employment Comm'n*, 514 F.2d 734, 737 (5th Cir.1975) (citation omitted) (rejecting plaintiff's contention that district court should have used adverse inference rule to find defendant in violation of Title VII);[22,23] *see also Drakeford v. Ala. Co-op. Extension System*, 416 F.Supp.2d 1286, 1309 (M.D.Ala.2006) (applying *Vick* in Title VII and 42 U.S.C. §§ 1981, 1983 case).

The Court concludes that Plaintiff is not entitled to an adverse inference. First, the Former Fifth Circuit's decision in *Vick* does not require an adverse inference based solely on Sfreddo's destruction of

---

**21.** The Court notes that its citation to cases involving 29 C.F.R. § 1602.14(a) is equally applicable to the instant case to which 29 C.F.R. § 1602.31 applies because the "language of these two sections is very similar and the analysis [therefore is] the same under either section." *Shipley v. Dugan*, 874 F.Supp. 933, 939 n. 2 (S.D.Ind.1995).

**22.** The Court notes that there is an apparent split in circuit court authority concerning the mens rea required to obtain an adverse inference stemming from the violation of the EEOC record retention regulations. As discussed above, the Eleventh Circuit requires "bad conduct" by the defendant. *See Vick*, 514 F.2d at 737. The Eighth Circuit appears to follow this bad conduct standard, *see Groves v. Cost Planning and Mgmt. Int'l, Inc.*, 372 F.3d 1008, 1010 (8th Cir.2004) (requiring the plaintiff to demonstrate that the document would have favored her case and the destruction of the documents was motivated by a desire to suppress the truth), as does the Seventh Circuit, *see Park v. City of Chicago*,

297 F.3d 606, 615 (7th Cir.2002) (citing *Rummery*, 250 F.3d at 558) (intimating that a violation of the EEOC record retention regulation does not automatically trigger an adverse inference "absent bad faith"). The Second and Tenth Circuits do not require this bad faith standard. *See Zimmermann v. Assoc. First Capital Corp.*, 251 F.3d 376, 383–84 (2d Cir.2001) (noting that a party need not show bad faith to obtain the inference; only that the documents were intentionally destroyed) (citing *Byrnie*, 243 F.3d at 109); *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1419 & n. 5 (10th Cir.1987) (finding an adverse inference was appropriate where personnel records were destroyed in violation of EEOC regulations even without evidence of bad faith destruction of documents).

**23.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), the court adopted as binding precedent all of the decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981.

her notes. Plaintiff has presented absolutely no argument to create an issue of material fact that Sfreddo's destruction was in bad faith. Without such evidence, the Court cannot make a favorable inference based on the destruction of documents. Sfreddo testified that Marchant–Wellmon told Sfreddo to return the applications and the selective list to HR but never told her that she needed to retain her comparative notes. (Sfreddo Dep. at 48). At most, this evidence demonstrates that Sfreddo was negligent in destroying her comparative notes. Under binding Eleventh Circuit law, Plaintiff needed to provide evidence of bad faith. *Vick,* 514 F.2d at 737. Plaintiff has not made the Court aware of any evidence to suggest bad faith such as testimony from Hagler or Marchant–Wellmon instructing Sfreddo to retain her comparative notes. [*See* Doc. 33 at 23]. As a result, Plaintiff is not entitled to a favorable inference concerning the destruction of documents.

Second, the Court is unconvinced that a jury must determine Sfreddo's true motive in destroying her notes because "this motive is in her mind." This argument fails to create any issue of material fact that Sfreddo's destruction of the notes was discriminatory. Instead, the argument suggests that the mere possibility of a bad motive to destroy the notes is sufficient to survive summary judgment. Plaintiff speculates, however, that Sfreddo's motive was bad without providing any evidence to support this assertion. This Court cannot draw any inference in Plaintiff's favor based on speculation. *See Brown v. Snow,* 440 F.3d 1259, 1266 (11th Cir.2006) (refusing to draw an unreasonable inference from speculative testimony); *Holiday Wholesale Grocery Co. v. Philip Morris Inc.,* 231 F.Supp.2d 1253, 1271 (N.D.Ga. 2002) ("[A]n inference is unreasonable if a jury must engage in speculation and conjecture to such a degree as to render its

finding 'a guess or mere possibility.' ") (citation omitted). With only speculation that Sfreddo's destruction of notes was based on bad motive, Plaintiff cannot establish pretext based on the destruction of notes. *See Grube v. Lau Indus., Inc.,* 257 F.3d 723, 730 (7th Cir.2001) (indicating that speculation cannot establish pretext); *Lowery v. Univ. of Houston–Clear Lake,* 82 F.Supp.2d 689, 696 (S.D.Tex.2000) ("Speculation and belief are insufficient to create a fact issue as to pretext, and pretext cannot be established by mere conclusory statements of a plaintiff who feels that she has been discriminated against.").

### l. Human Resource Policies

Plaintiff argues that Defendants violated HR policies by: (1) obtaining additional information about Walker's qualifications after promoting her to the JAS position; (2) failing to rely on the preferred and essential functions criteria contained in the JAS announcement; (3) failing to rely on the objective criteria in making a job selection; and (4) failing to document properly the reasons for selecting Walker for the position. [Doc. 33 at 23–25].

 As stated above, "an employer's deviation from its own standard procedures may serve as evidence of pretext." *Hurlbert,* 439 F.3d at 1299. However, to establish pretext based on a failure to follow procedures, "a plaintiff must show that the deviation from policy occurred in a discriminatory manner." *Rojas,* 285 F.3d at 1344 n. 4.

### Obtaining Additional Information about Walker

The Court concludes that Sfreddo's decision to obtain additional information about Walker following the promotion decision and in contradiction of Cobb County policy provides some evidence of pretext. A hir-

ing official is not supposed to obtain additional information from a selected candidate to justify her recommendation to the HR Department. (Hagler Dep. at 36). As discussed in relation to the post hoc pretext arguments, the evidence when viewed most favorably to Plaintiff indicates that Sfreddo sought additional documentation from Walker after having made the promotion decision. Although this violation of policy has not been shown to be discriminatory, the Court observes, as discussed above, that it is strange to promote someone and then seek justification for the promotion. Because this evidence shows a violation of Cobb policy, Defendants' decision to seek the letter from Judge Dodd is suspicious. There may be an innocent explanation, but Defendants have not offered one on summary judgment. As a result, the Court concludes that this violation of policy provides evidence of pretext.

***Evaluating Candidates Based on Preferred and Essential Functions Criteria***

The Court concludes that Plaintiff cannot establish pretext based on Defendants' evaluation methods. Regarding the essential function criteria, a hiring official is expected to use these criteria to evaluate an applicant for a position. (Hagler Dep. at 23–24; P ¶ 8). Plaintiff has not identified how Sfreddo failed to consider the essential function criteria in evaluating Walker. [*See* Doc. 33 at 24]. Without such an argument, the Court cannot simply determine that Sfreddo failed to follow Cobb County policy, and the Court is not under any obligation to search the record to find evidence supporting Plaintiff's position. *See 2025 Emery Highway, L.L.C. v. Bibb County, Ga.*, 377 F.Supp.2d 1310, 1333 (M.D.Ga.2005) ("While such evidence may exist, it is surely not the duty of this Court to scour the record in an attempt to locate evidence which may raise a material question of fact on summary judgment."); *Keach v. U.S. Trust Co., N.A.*, 245 F.Supp.2d 941, 945 (C.D.Ill.2003) ("It is not the responsibility of this Court to root through the record like a pig in search of truffles to determine whether there is a factual basis" for determining liability.).

Based on Plaintiff's statement of facts, it appears that Plaintiff would have argued that Sfreddo relied on criteria that were not based on the essential functions contained in the job announcement. Instead, Sfreddo relied on education, experience, supervisory experience, and interview performance. (*See* P ¶ 59). Assuming that his evidence establishes that Sfreddo failed to evaluate candidates based on the essential functions,[24] Plaintiff has not shown this violation of the policy to be discriminatory. This evidence shows that all candidates were evaluated based on these criteria, not solely Walker. As a result, Plaintiff has not demonstrated that the violation of the policy was in any way discriminatory or otherwise to Plaintiff's disadvantage.

Regarding the preferred criteria, Cobb County officials are expected to evaluate candidates based on the preferred criteria for a position. (D ¶ 9). Again, Plaintiff has not argued how Defendants failed to apply this policy. The Court observes, however, that the undisputed evidence indicates that Sfreddo evaluated the candidates based on the preferred criteria of a four-year college degree. (P ¶ 60; D Resp. ¶ 60). The Court is unaware of any policy that an individual must be promoted if she meets the preferred criteria while a competing applicant does not. That Sfreddo considered the preferred criteria is sufficient under Cobb County policy. As a

---

**24.** The Court recognizes that Defendants object to this statement of fact. (*See* D Resp. ¶ 59).

result, the Court finds that Sfreddo followed Cobb County policy by considering the preferred criteria.[25]

### Subjective Criteria

The Court concludes that the use of subjective criteria did not violate Cobb County policy and therefore did not establish pretext. The evidence shows that Cobb County finds it important for hiring officials to rely upon objective criteria in making selection decisions. (P ¶ 10). This policy does not support, however, the inference that Cobb County has a policy prohibiting hiring officials from considering subjective criteria. Also, the Court notes that Plaintiff has not elaborated regarding to what subjective criteria she refers in arguing that Sfreddo relied on subjective criteria. [*See* Doc. 33 at 24–25]. Without such an argument or evidence supporting the argument, the Court has no basis to determine that Defendants' use of subjective criteria was for an illicit purpose.[26]

### Properly Documenting the Reasons for Selecting an Individual for a Position

The Court concludes that Plaintiff has not established pretext by implying that Defendants violated policy due to their failure to document properly the reasons

for promoting Walker. Other than citing to Hagler's deposition testimony that hiring authorities must properly document the reasons for selecting an individual for a position, Plaintiff has not argued how Sfreddo violated this policy. [Doc. 33 at 24]. As stated above, the Court does not manufacture arguments for parties. *See 2025 Emery Highway, L.L.C.*, 377 F.Supp.2d at 1333. As a result, the Court does not find that Plaintiff has established pretext.

#### m. EEOC Determination

Plaintiff argues that the EEOC's finding that Plaintiff "more likely than not" experienced discrimination when she was denied the JAS position is evidence of pretext. [Doc. 33 at 25].

 The Eleventh Circuit has determined that an EEOC determination may be admissible evidence in a jury trial so long as it is not unduly prejudicial. *See Walker v. NationsBank of Fla. N.A.*, 53 F.3d 1548, 1554–55 (11th Cir.1995). However, a district court is "not required to defer or make reference to the EEOC determination" in its opinion deciding summary judgment and therefore, is not required to find the determination creates an

---

25. The Court recognizes that Plaintiff probably meant to argue that Sfreddo did not properly account for Plaintiff's four-year degree in making the promotion decision. However, Plaintiff's brief does not raise this argument, [Doc. 33 at 24], so the Court will not raise it for Plaintiff. *Bowden ex rel. Bowden v. Wal–Mart Stores, Inc.*, 124 F.Supp.2d 1228, 1236 (M.D.Ala.2000) ("It is not for the court to manufacture arguments on Plaintiff's behalf."); *see also Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (placing the burden on the parties to adduce arguments because "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment"). At any rate, the Court would not find this evidence to be pretext given the

undisputed evidence that Sfreddo followed this policy. With such evidence, Plaintiff asks the Court to question the wisdom of choosing someone with a GED over someone with a college diploma, which the Court will not do, especially given evidence that other factors played a role in the employment decision. *See Alexander*, 207 F.3d at 1339 (noting that courts do not question the wisdom of an employer's decision).

26. The Court further notes that an employer's use of subjective criteria in making an employment decision does not establish pretext by itself. *See Chapman*, 229 F.3d at 1033–34 ("Subjective reasons can be just as valid as objective reasons.").

issue of material fact. *See Kincaid v. Bd. of Trs.*, 188 Fed.Appx. 810, 817 (11th Cir. 2006) (citing *Moore v. Devine*, 767 F.2d 1541, 1549–51 (11th Cir.1985), *modified on reh'g*, 780 F.2d 1559, 1560 (11th Cir.1986)). It is the Court's, not the EEOC investigator's, duty to determine whether issues of material fact exist. *Walker*, 53 F.3d at 1554–55; *Williams v. Ala. Indus. Dev't Tr'g*, 146 F.Supp.2d 1214, 1224 (M.D.Ala. 2001). As a result, an EEOC determination "letter is suitable for framing but does not create an issue of fact." *Williams*, 146 F.Supp.2d at 1224; *see also Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1283 (9th Cir.2000) ("Nor does the EEOC reasonable cause determination create a genuine issue of material fact."). The probative value of an EEOC determination depends on the other evidence in the case and the quality of the investigation and the conclusions therefrom. *See Williams*, 146 F.Supp.2d at 1224 (finding EEOC determination letter of no probative value because it did not suggest what evidence was considered and it indicated that the EEOC was not fully apprised of plaintiff's work history); *see also Kincaid*, 188 Fed.Appx. at 817 (finding conclusory EEOC determination to be unhelpful); *Coleman*, 232 F.3d at 1283 (citing cases and holding that a conclusory EEOC determination letter provides little probative value); *Johnson v. Yellow Freight Sys., Inc.*, 734 F.2d 1304, 1309 (8th Cir.1984) ("EEOC determinations are not homogenous products; they vary greatly in quality and factual detail.").

The Court concludes that the EEOC determination does not create an issue of material fact on the issue of pretext. The EEOC's discrimination determination regarding the JAS promotion is as follows:

> A review of the records submitted by [Cobb County] revealed that [Plaintiff] had the preferred qualification of a four year college degree, while the selectee (White) only had a General Education Diploma (GED). Like the selectee, the Charging Party completed the "Stepping Up to Supervisor" course. At the time of the selection, the Charging Party not only had a four year college degree, she had approximately seven years of experience working in a courtroom and three years of relevant experience working in a law firm as a legal assistant.

> Finally, the only supervisory experience noted by the selectee in her application package was during the period of July 1993 to April 1998, when she "…. worked in a supervisory position for training …" She did not indicate specific dates or how many employees she supervised. In any case, this was, at least, seven years prior to her selection for the Judicial Administrative Supervisor position.

> Investigation revealed that as of November 23, 2005, there were six Juvenile Administrative Tech II (five Whites and one Black); six Juvenile Administrative Tech III (four Whites and two Blacks); and two Judicial Administrative Supervisors (both White). Finally, there are also four Judicial Program Coordinators (three Whites and one Black). It should be noted that the Judicial Program Coordinator (Black was promoted two months after this charge was filed. Clearly given the pool of qualified applicants in the Atlanta [Standard Metropolitan Statistical Area], Blacks are clearly underutilized in these positions.

> Based on the analysis, I have determined that the evidence obtained during the investigation established that [it] is more likely than not that [Plaintiff] was denied the Juvenile Administrative Supervisor position because of her race (Black) in violation of Title VII.

(EEOC Determ. in Exh. 22, Doc. 34). Although the EEOC's determination was not conclusory, it was not entirely accurate in its recitation of the evidence. First, the EEOC investigator noted that Plaintiff had three years of relevant experience working in law firms, but Plaintiff testified that she worked as a legal assistant for about one year. (Keaton Dep. at 22). Second, the EEOC investigator indicated that Walker completed the Stepping Up to Supervisor course, but Walker did not complete this course. (Walker Dep. at 44–46; Sfreddo Dep. at 9–10). These apparent factual errors undercut the probative value of the determination.

Also, the Court finds that the standard used by the EEOC investigator in making the discrimination finding does not sufficiently adhere to Eleventh Circuit law. First, the EEOC determination was made by comparing qualifications, which as this Court stated above did not present any issues of material fact. Second, the EEOC determination appears to have relied on some sort of statistical analysis based on the Standard Metropolitan Statistical Area ("SMSA"), but does not provide any sort of explanation concerning the value of the SMSA. For these reasons, the Court finds that the EEOC determination is not probative of pretext. *See Matthews v. City of Dothan,* No. 1:04–CV–640, 2006 WL 3742237, at * 11 (M.D.Ala. Dec. 18, 2006) (finding the EEOC determination unreliable because: (1) the brevity of the determination and lack of citation to the evidence suggested that the EEOC was not fully informed and certainly did not have the benefit of fully developed facts through an adversarial discovery process; and (2) the standard utilized by the EEOC for determining whether discrimination occurred is not permissible under the law).

Although Plaintiff cannot establish pretext through the EEOC determination, the Court concludes that Plaintiff has created issues of material fact to establish that Defendants' legitimate, nondiscriminatory reasons for terminating Plaintiff were pretext as discussed above. The Court recognizes that summary judgment is not always appropriate merely because a party establishes an employer's reasons to be pretext. *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) ("Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory."); *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (holding that rejection of employer's legitimate, nondiscriminatory reason does not compel judgment for plaintiff).

The Court concludes, however, that summary judgment is inappropriate for the JAS promotion decision given Plaintiff's undisputed ability to establish a *prima facie* case and her creation of issues of material fact to establish pretext. Specifically, Plaintiff directly has cast doubt on two of the three reasons given by Defendants—Plaintiff's interview responses and Walker's greater supervisory experience. Plaintiff has also shown that certain Defendants should have followed certain procedures, but Defendants failed to do so when making the JAS promotion decision, to Plaintiff's detriment. Further, Plaintiff has shown that Defendants ignored a preferred criterion for the position. Finally, Plaintiff has suggested that Defendants sought information to support their promotion decision after they learned Plaintiff was complaining about the promotion decision. This evidence of pretext along with Plaintiff's ability to present a *prima facie* case is sufficient to survive summary judgment. *See id.* ("[A] plaintiff's prima facie

case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.").

The Court recognizes that Defendant has raised three legitimate, nondiscriminatory reasons for not promoting Plaintiff: her interview responses, Walker's superior supervisory experience; and Walker's greater experience. To survive summary judgment, the Eleventh Circuit ordinarily requires a plaintiff to establish pretext for each reason given. *See Chapman,* 229 F.3d at 1037 ("[T]o avoid summary judgment, a plaintiff must produce sufficient evidence for a reasonable factfinder to conclude that *each* of the employer's proffered nondiscriminatory reasons is pretextual") (emphasis added); *Combs v. Plantation Patterns,* 106 F.3d 1519, 1539–43 (11th Cir. 1997) (requiring employee to rebut "all of the defendant's proffered nondiscriminatory reasons for its actions" to avoid judgment as a matter of law). Plaintiff has only demonstrated pretext for two of these reasons. Plaintiff has not offered any evidence to undermine the veracity of Defendants' reason that Walker had better experience. Thus, under Eleventh Circuit law, Plaintiff ordinarily could not survive summary judgment because one of Defendants' legitimate, nondiscriminatory reasons have not been rebutted.

However, the Eleventh Circuit has indicated that there may be exceptions to its rule that a plaintiff must establish pretext as to each proffered reason, but has not provided guidance as to when such an exception can be made. *See Chapman,* 229 F.3d at 1037 n. 30 (suggesting that an exception to the rule that a plaintiff must rebut every reason proffered might exist); *see also Alexander v. Chattahoochee Valley Cmty. Coll.,* 325 F.Supp.2d 1274, 1292–93 & n. 31 (M.D.Ala.2004) (agreeing with

*Chapman* dissent that "if the evidence of pretext as to some of the employer's proffered explanations is strong enough to allow a factfinder to conclude that the employer lacks all credibility, the plaintiff should be able to survive summary judgment without showing that *each* of the employer's proffered explanations is pretextual") (emphasis in original).

The Court concludes that such an exception should apply in the instant case. Although it is undisputed that Walker had one more year of experience in the Juvenile Court than Plaintiff and this experience was a factor in the decision-making process, as noted in the Court's discussion of this topic, *see* pp. 1299–1300, *supra,* Defendants did not proffer evidence to support this reason in their brief, and in the materials which the Court found in the record, they proffered this reason without any explanation. *See Hopson v. Daimler-Chrysler Corp.,* 306 F.3d 427, 435–36 (6th Cir.2002) (describing decision-maker's annual evaluation of person who received the position as "rated more highly" than plaintiff as "seemingly a mantra for [decision-maker] in articulating his reasons for not having given [plaintiff] any one of these five positions."); *see also Burns v. Gadsden State Cmty. Coll.,* 908 F.2d 1512, 1519 n. 10 (11th Cir.1990) (noting conclusory nature of decision-maker's affidavit). An exception to *Chapman's* general rule also is appropriate given that Plaintiff has offered other evidence of pretext by showing that Defendants: (1) failed to follow the preferred criteria for the job; (2) obtained documentation to support Walker's promotion after making the promotion decision and after receiving Plaintiff's complaint of discrimination; and (3) chose an applicant who provided misrepresentations in her job application, which under Cobb County policy could have led to Walker's disqualification.

Accordingly, the Court **RECOM-MENDS** that Defendants' motion for summary judgment be **DENIED** on Plaintiff's Title VII claim concerning the JAS promotion decision.

### C. County Liability under § 1983

Defendant argues that Cobb County cannot be held liable under § 1983 because the individual Defendants' promotion decisions were not pursuant to any custom, policy, or practice of discriminating against employees based on race. [Doc. 25–2 at 16–20]. Instead, Defendant argues that it has a policy in place of hiring and promoting individuals without consideration of race. [*Id.* at 19]. Defendant also contends that Plaintiff cannot establish a constitutional violation because she had not demonstrated that its reasons for terminating her are pretext for discrimination. [*Id.* at 18].

Plaintiff responds that the County is liable under § 1983 because the constitutional deprivations were caused by Marchant–Wellmon to whom Cobb County had delegated final policy making authority concerning promotions in the Juvenile Court. [Doc. 33 at 28]. Plaintiff also asserts that Marchant–Wellmon has engaged in a practice of not promoting black employees during her 16–year tenure as Director of Juvenile Court Services. [*Id.*]. Defendants reply that there was no violation of county policy. [Doc. 41 at 9–10].

■ "[T]he Supreme Court has held that counties (and other local government entities) are 'persons' within the scope of § 1983, and subject to liability." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir.2004). For a governmental entity to be liable under § 1983, the plaintiff must establish: "(1) that [her] constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that consti-

tutional right; and (3) that the policy or custom caused the violation." *Id.*

■ A plaintiff demonstrates that a custom or policy exists by identifying: (1) an officially promulgated policy; (2) an unofficial custom or practice shown through repeated acts of a final policy maker, *Grech v. Clayton County, Ga.*, 335 F.3d 1326, 1329 (11th Cir.2003) (*en banc* ); or (3) an action by a decisionmaker who "possesses *final authority* to establish *municipal policy* with respect to the action ordered," *Quinn v. Monroe County*, 330 F.3d 1320, 1326 (11th Cir.2003) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)) (emphasis added in *Quinn* ). Plaintiff alleges that Cobb County is liable because Marchant–Wellmon possessed final policymaking authority. [*See* Doc. 33 at 28]. " '[S]tate and local positive law' determine whether a particular official has final policymaker authority for § 1983 purposes." *Cooper v. Dillon*, 403 F.3d 1208, 1221 (11th Cir.2005) (citing *Jett v. Dallas Ind. Sch. Dist.*, 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989)). Municipal liability may be imposed based on a single decision by municipal policymakers in "appropriate circumstances." *Id.* at 1221 (quoting *Pembaur*, 475 U.S. at 480, 106 S.Ct. 1292). "[A] municipal official does not have final policymaking authority over a particular subject matter when that official's decisions are subject to meaningful administrative review." *Morro v. City of Birmingham*, 117 F.3d 508, 514 (11th Cir. 1997); *see also Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1292 (11th Cir.2004) (noting that "a theme reiterated through much of [Eleventh Circuit] case law-in assessing whether a governmental decision maker is a final policy maker, [the Eleventh Circuit] look[s] to whether there is an actual 'opportunity' for 'meaningful' review").

■ The Court concludes that Cobb County is not subject to § 1983 liability because Marchant–Wellmon is not a final policymaker. Initially, the Court notes that Plaintiff's citation to Marchant–Wellmon's testimony does not support her proposition that "Cobb County delegated final policy making authority with respect to promotions in the Juvenile Court to Marchant–Wellmon." [Doc. 33 at 28]. Marchant–Wellmon never testified that she was delegated final policy making authority. Instead, the following exchange occurred during Marchant–Wellmon's deposition:

Q. Since you've been Director in Cobb County since 1991, has your duties been to be the primary or ultimate manager for the Juvenile Court?

A. That's correct.

Q. And you're the ultimate hiring authority for the Juvenile Court?

A. For all positions except judges and their immediate employees.

(Marchant–Wellmon Dep. at 14). This testimony makes no mention about Cobb County delegating final policy making authority to Plaintiff. It makes no reference to whether Marchant–Wellmon's decisions were subject to review. As a result, the

Court is not persuaded that it establishes that Marchant–Wellmon was a final policy maker for Cobb County. *Cf. Mandel v. Doe,* 888 F.2d 783, 794 & n. 18 (11th Cir.1989) (describing testimonial evidence that established individual was a policymaker).

Instead, the evidence is to the contrary. Based on the limited evidence before the Court, the promotion decisions in this case were subject to meaningful review. Plaintiff testified that she initiated a Civil Service appeal of the promotion decision. (Keaton Dep. at 104). This evidence demonstrates that Marchant–Wellmon was not a final policymaker because her employment decisions were subject to review.[27] *See Scala v. City of Winter Park,* 116 F.3d 1396, 1402–03 (11th Cir.1997) (holding that the city manager and public safety director were not final policymakers because their termination decisions were subject to meaningful administrative review by a city civil service board).[28]

Accordingly, the Court **RECOMMENDS** that Defendants' motion for summary judgment be **GRANTED** on all claims against Cobb County and the individual Defendants in their official capacities.[29]

---

27. Plaintiff did not take advantage of the Civil Service Board appeal, and Plaintiff has failed to present any other evidence to show whether Marchant–Wellmon's decisions were subject to meaningful review. As a result, Plaintiff has not met her burden of creating an issue of fact that Marchant–Wellmon was a policymaker.

28. The Court notes that as a JAT III in the Juvenile Court, Plaintiff appears to be under the jurisdiction of the Cobb County civil service board. *See* Cobb County Code, Part II, Ch. 22, Div. 22 §§ 22–42(a), 22–43(a), (b), 22–44(9). Also, Plaintiff was permitted to appeal the promotion decisions to the Civil Service board based on her discrimination allegations. *See* Cobb County Code, Part II, Ch. 22,

Div. 22 § 22–50 ("Any civil service employee who … claims unlawful discrimination … shall have the right to appeal pursuant to the rules and standards of the civil service board."). As a result, the Cobb County Code is consistent with Plaintiff's testimony that she could appeal the promotion decisions. The Court therefore finds that Marchant–Wellmon's employment decisions insofar as they related to civil service employees were subject to meaningful review.

29. The suit against the individual Defendants in their official capacities was the functional equivalent of a suit against Cobb County. *See Cooper,* 403 F.3d at 1221 n. 8. As a result, a grant of summary judgment for the County is the same as a grant of summary judgment for

*D. Individual Defendants' Liability*

*1. Title VII*

■ Defendants argue that there is no individual liability under Title VII, so any Title VII claims against the individual Defendants must be dismissed. [Doc. 25–2 at 21]. Plaintiff does not respond to this argument. [*See* Doc. 33]. There is no individual liability under Title VII. *See Dearth v. Collins,* 441 F.3d 931, 933 (11th Cir.2006) ("[R]elief under Title VII is available against only the employer and not against individual employees whose actions would constitute a violation of the Act, regardless of whether the employer is a public company or a private company."); *Hinson v. Clinch County, Georgia Bd. of Edu.,* 231 F.3d 821, 827 (11th Cir.2000) (citation omitted); *Busby v. City of Orlando,* 931 F.2d 764, 772 (11th Cir.1991).

Accordingly, to the extent that Plaintiff asserted Title VII claims against the individual Defendants, the Court **RECOMMENDS** that summary judgment be **GRANTED** in the individual Defendants' favor.

*2. Section 1983*

■ A plaintiff establishes liability against an individual under § 1983 by "prov[ing] (1) a violation of a constitutional right, and (2) that the alleged violation was committed by a person acting under color of state law." [30] *Holmes v. Crosby,* 418 F.3d 1256, 1258 (11th Cir.2005).

*a. Constitutional Violation*

■ Defendants argue that Plaintiff cannot hold the individual Defendants lia-

ble under § 1983 because she has not established a constitutional violation by showing that their reasons for not promoting her were pretext for discrimination. [Doc. 25–2 at 22–23]. Plaintiff responds that based on her pretext arguments, she has established that the individual Defendants committed constitutional violations by engaging in race discrimination. [Doc. 33 at 25, 27].

*i. The Clerk Position*

As discussed above, Plaintiff has not created an issue of material fact on the issue of whether Marchant–Wellmon discriminated against Plaintiff by not promoting her to the Clerk position. As a result, the Court concludes that Plaintiff has not established a violation of the Equal Protection Clause brought under § 1983. *See Underwood,* 431 F.3d at 793 (noting that when Title VII and § 1983 are used as parallel remedies, the same elements comprise each claim).

Accordingly, the Court **RECOMMENDS** that summary judgment be **GRANTED** on Plaintiff's § 1983 claim against Marchant–Wellmon concerning her decision to promote Sfreddo to the Clerk position. [31]

*ii. JAS Position*

The Court concludes that because Plaintiff has created issues of material fact regarding whether Defendants acted discriminatorily in making the JAS promotion decision, Plaintiff has likewise established issues of material fact concerning the

---

the individual Defendants in their official capacities.

**30.** The parties do not dispute that Defendants were acting under color of state law. [*See generally* Docs. 25–2, 33].

**31.** Since the Court has concluded that Plaintiff cannot hold Marchant–Wellmon liable under § 1983 for her Clerk promotion decision, the Court need not discuss whether Marchant–Wellmon is entitled to qualified immunity on this claim.

whether Sfreddo and Marchant–Wellmon violated her Equal Protection rights.[32]

Accordingly, the Court **RECOMMENDS** that summary judgment be **DENIED** concerning Plaintiff's § 1983 claims against Sfreddo and Marchant–Wellmon.

### b. Qualified Immunity

The individual Defendants argue that qualified immunity bars Plaintiff from holding them liable under § 1983. First, they argue that Marchant–Wellmon and Sfreddo were acting within the scope of their discretionary authority when making the promotion decisions. [Doc. 25–2 at 23]. Second, Defendants argue that although the law is clearly established that race discrimination in the workplace violates the Equal Protection clause, they are entitled to qualified immunity because Plaintiff has not shown that the individuals acted with discriminatory intent. [*Id.* at 26].

Plaintiff responds that the individual Defendants are not entitled to qualified immunity. [Doc. 33 at 25–27]. Plaintiff contends that the law is clearly established that race discrimination in employment violates federal law. Plaintiff also asserts that her pretext arguments is evidence of race discrimination, preventing the individual Defendants from being protected by qualified immunity. [*Id.* at 27].

To determine whether a defendant is entitled to qualified immunity, a court first examines whether the defendant established that she was acting within her discretionary authority. If the defendant meets her burden, the court then must determine whether plaintiff can establish that: (1) the defendant's actions violated a statutory or constitutional right; and (2) the violation of the right was clearly established. *Skop v. City of Atlanta,* 485 F.3d 1130, 1136–37 (11th Cir.2007).

There is no dispute that the individual Defendants were acting within the scope of their authority in making the promotion decisions. [*See* Doc. 25–2 at 23; Doc. 33 at 25–27 (failing to challenge Defendants' assertion that it was undisputed that the individual Defendants were acting within the scope of their discretionary authorities)]. Defendants also correctly concede that the unconstitutionality of discriminating against individuals in employment decisions is clearly established. [*See* Doc. 25–2 at 26]. *See Bogle v. McClure,* 332 F.3d 1347, 1355 (11th Cir.2003) (noting that it is "clearly established that intentional discrimination in the workplace on account of race violated federal law"). As a result, the issue of whether the individual Defendants are entitled to qualified immunity hinges on whether Sfreddo and Marchant–Wellmon committed constitutional violations in the JAS promotion decision. As stated above, Plaintiff has established at

---

**32.** To the extent that Defendants argue that Marchant–Wellmon was not a decisionmaker in the JAS promotion, the Court disagrees. An individual is liable under § 1983 when he is the official decisionmaker. *See Quinn v. Monroe County,* 330 F.3d 1320, 1327–28 (11th Cir.2003). A decisionmaker is an individual "who has the power to make official decisions." *Id.* at 1326. Although Sfreddo was the hiring manager for the JAS position, (Marchant–Wellmon Dep. at 92–93), the evidence indicates that Marchant–Wellmon advised Sfreddo during the process and pos-

sessed the ultimate authority to make the JAS selection. (P ¶ 92). Marchant–Wellmon also agreed with Sfreddo's choice after Sfreddo made her case for promoting Walker instead of Plaintiff. (Marchant–Wellmon Dep. at 80). Based on this evidence, the Court concludes that Marchant–Wellmon cannot escape individual liability from the § 1983 claim based on the JAS promotion decision given the evidence of pretext and her ultimate decision-making authority in the JAS promotion process.

least a material fact question whether a constitutional violation occurred in the JAS promotion decision.

Accordingly, the individual Defendants are not entitled to qualified immunity.

## V. CONCLUSION

For the aforementioned reasons, the Court **RECOMMENDS** that Defendants' Motion for Summary Judgment, [Doc. 25], be **GRANTED IN PART OR DENIED IN PART.** The Court also **GRANTS** the parties' motions for leave to file excess pages. [Docs. 25, 30].

**IT IS SO ORDERED and RECOMMENDED,** this the 15th day of November, 2007.